473 So.2d 1235 (1985)
Gary TRAWICK, Appellant,
v.
STATE of Florida, Appellee.
No. 57077.
Supreme Court of Florida.
May 16, 1985.
Rehearing Denied September 5, 1985.
*1236 Louis M. Jepeway, Jr. of Jepeway and Jepeway, Miami, for appellant.
Jim Smith, Atty. Gen. and Carolyn M. Snurkowski, Asst. Atty. Gen., Miami, for appellee.
PER CURIAM.
This case is before the Court on appeal from a circuit court judgment imposing a sentence of death. We have jurisdiction under article V, section 3(b)(1), Florida Constitution. Although appellant's convictions of first-degree murder and other offenses were entered pursuant to appellant's pleas of guilty, he is entitled to an appeal by virtue of having been sentenced to death. § 921.141(4), Fla. Stat. (1977).
Appellant pleaded guilty to charges of first-degree murder, attempted murder, armed robbery, and attempted armed robbery. He was originally charged by indictment with these and four other serious offenses. Having entered pleas of not guilty, he announced in court through counsel that he would change his pleas to guilty on all eight accusations. Upon inquiry by the court, however, appellant changed his mind again and withdrew his guilty pleas, all at the same pretrial hearing. Then an agreement was reached whereby appellant pleaded guilty to the four offenses of which he stands convicted and the state dropped the other four, reserving the right to present evidence of all eight offenses during the sentencing hearing. After the court accepted the guilty pleas and adjudicated appellant guilty, defense counsel announced to the court that during his interview with appellant that morning he appeared despondent and mentioned the possibility of suicide. The purpose of the announcement, defense counsel said, was to provide notice of the problem to the court and to jail officials so that adequate precautions would be taken in handling the defendant.
At the sentencing proceeding the state presented appellant's confession, which was read to the jury. Appellant stated that he and three others borrowed a semiautomatic rifle and went out to rob a gasoline station. At the first location they went to, Linda Gray was the attendant, overseeing the gasoline station from within a glass enclosure. Appellant approached her and demanded money. When she refused, appellant fired the weapon at her; the bullet penetrated the glass shield and struck her in the face. Appellant and his accomplices then fled the scene by automobile and drove around for a while. At one point appellant, from within the moving car, fired several rounds at some people standing on the street; one of the bullets struck a car. Then the four young men went to a convenience store and demanded money of the cashier, Robert Hayes. They turned his face to the wall and ordered him *1237 not to turn around as they emptied the cash register. Hayes glanced around at the robbers and appellant shot him in the back. The victim died thirty-six hours later from damage to vital organs. In his statement appellant said that he shot the man so that he would not be able to identify appellant as the man who robbed him.
In addition to appellant's statement, the state presented evidence concerning the victim's injuries, including the opinion that he must have endured excruciating pain before his death thirty-six hours after the attack. For the murder of Robert Hayes the jury recommended a sentence of death.
After receiving the evidence and the jury's recommendation, the trial judge heard the arguments of counsel and announced his sentencing findings as follows:
THE COURT: During the course of the proceedings I did make careful notes of all the evidence that was presented.
First, as to those aggravating circumstances, Mr. Trawick, in committing the crime for which he is sentenced, did not only create a great risk of death to many persons preceding, during and even after committing the felony of robbery of the U-Tote'M Store.
The shooting in the face of Linda Gray, a young female, was unnecessary. It was pitiless. It was cruel; the reckless discharge of this high-powered rifle in the direction of innocent by-standers in the Big Daddy's Store of which they subsequently made light of is further evidence of utter disregard for the lives of other people, all by young people, ages sixteen through twenty, and that the crimes for which the defendant is to be sentenced was committed while he was engaged in the commission of an armed robbery.
The very casual method by which the robberies were planned, conceived and executed, is further evidence of a flagrant disregard for the probable dangerous consequences of such lawlessness.
The crime for which he is to be sentenced was committed for the purpose of avoiding or preventing identification and lawful arrest for the offense.
The deceased, Robert Hayes's, injuries, were very moving by the testimony of his wife. He was her husband and evidently a reliable and long-time employee of the U-Tote'M Store, being there four years; was a manager there, and their policy was to plan a robbery with give up the money and save your life.
He offered absolutely no resistance during the course of the robbery.
The crime for which the defendant is to be sentenced was for pecuniary gain. It didn't seem to make much difference, the amount, just anything, $28, food stamps, and then go back to the store to the next day.
I think the crime for which the defendant is to be sentenced was especially heinous, was atrocious, was cruel.
At this point defense counsel interrupted the court's recitation of findings to argue that the aggravating factors of the murder having been committed in the course of a robbery and having been committed for pecuniary gain were both based on the same feature of the offense and were properly treated as only one aggravating circumstance. Without indicating whether he would revise his findings in response to this defense objection the trial judge simply continued his recitation of findings.
THE COURT: Other than those words that were uttered here today, I am convinced that there has not been any demonstration of real remorse or contrition since the apprehension of the defendant. It was especially shocking to hear from the confession, a suggestion that there may be other circumstances where he could just as easily take the life of another person.
As to the mitigating factors, I began to search the records from the first day for any evidence that would spare the moment of this decision; I have been this path before.
Even in light of a jury's recommendation once before, I felt very comfortable in rejecting it and imposing a life penalty; *1238 here, the mitigating factors are very minimal.
The jury is not aware of it, but I'm aware that the defendant was on trial or awaiting trial for a robbery at the time of this offense; that is how the case came to this division.
The only real mitigating factor is age. Twenty years is not exactly adolescence.
I think it is an age at which people are thought to be adult and responsible for their conduct. In fact, at the preliminary negotiations it was suggested that Mr. Trawick dominated the other young people.
The crimes committed here were not caused by any sudden loss of temper or temporary rage; they were cold, calculated, ruthless. Applying the law specifically I cannot find in favor of the defendant.
The ultimate penalty is still mandated.
It is the sentence of the Court that the defendant die by electrocution. There is an automatic review by the Supreme Court so the proceedings will be stayed.
Appellant raises several challenges to his convictions. Although pleas of guilty normally vitiate the right of appellate review of convictions, section 921.141 applies in all cases of "conviction or adjudication of guilt of a defendant of a capital felony." § 921.141(1), Fla. Stat. (1977). Section 921.141(4) provides: "The judgment of conviction and sentence of death shall be subject to automatic review by the Supreme Court of Florida." Thus appellant is entitled to appellate review not only of his sentence of death but also his first-degree murder conviction.
Moreover, several of appellant's arguments pertain to the validity of his guilty pleas and the correctness of the court's action in accepting them. Thus they are reviewable on appeal. Robinson v. State, 373 So.2d 898 (Fla. 1979). Appellant contends that the trial court should have conducted a competency hearing on its own motion. Appellant asserts that the evidence before the court at the hearing on appellant's plea was such as should have raised a question as to appellant's competency to enter pleas of guilty. He relies on the rule that whenever there are reasonable grounds to believe a defendant is not competent, a trial court must on its own motion conduct an inquiry into his competency. Fla.R.Crim.P. 3.210. At any time before or during trial of a criminal charge, the defendant's irrational behavior, other abnormality of demeanor, and prior medical opinion or behavioral history may all be relevant and may be sufficient to call for further inquiry by the court on its own motion. Drope v. Missouri, 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975); Lane v. State, 388 So.2d 1022 (Fla. 1980). This principle also applies to the situation of an appearance in court for purposes of tendering a plea and may serve to raise a question about the defendant's competency to submit a plea. Baker v. State, 408 So.2d 686 (Fla. 2d DCA 1982); Alleluio v. State, 338 So.2d 1137 (Fla. 1st DCA 1976).
Appellant asserts that after the acceptance of his guilty pleas, the court was notified of appellant's state of despondency and of his having contemplated suicide earlier that morning. Appellant argues that this information and his ambivalence about pleading guilty were sufficient to raise a reasonable question about his competence and that the court should have made further inquiry.
Appellant's despondency and his ambivalence about his plea did not constitute reasonable grounds to believe he might be incompetent. In Drope the Supreme Court said that a suicide attempt is a substantial indication of possible mental instability, but refrained from holding that such an attempt legally creates a reasonable doubt about the defendant's competence to stand trial. A number of courts addressing this question have held that it does not. See State v. Messier, 114 Ariz. 522, 562 P.2d 402 (1977); W.W., Jr. v. State, 388 So.2d 1317 (Fla. 5th DCA 1980), review denied, 392 So.2d 1381 (Fla. 1981); People v. Heral, 54 Ill. App.3d 527, 12 Ill.Dec. 215, 369 N.E.2d 922 (1977).

*1239 It is apparent that while an attempted suicide may indicate a possibility of mental disorder, the fact of such an attempt will not always suffice of itself to establish a probability that the defendant is unable to comprehend his position, understand the nature and object of the proceedings against him, or cooperate with his counsel in his own defense.
People v. Heral, 54 Ill. App.3d at 532, 12 Ill.Dec. at 218, 369 N.E.2d at 925. Thus, whether a suicide attempt is sufficient to raise the question will depend on all the other facts and circumstances of the case.
In the present case, there was not even an attempt at suicide, but only the statement of defense counsel that appellant was despondent and had indicated the contemplation of suicide. The mere suggestion of the possibility that the accused was contemplating suicide did not as a matter of law raise a sufficient reasonable ground to believe that appellant was incompetent.
Appellant also argues that his ambivalence about his pleas to the charges should have raised a question about his competency. We believe, however, that the matter was correctly resolved by the trial court's examination of appellant regarding the pleas. The judge questioned appellant extensively before accepting the pleas of guilty. The trial court, of course, was in a much better position than are we to determine whether appellant's demeanor at the hearing provided any basis for doubt as to his competency. The trial court specifically found that the pleas were entered freely, voluntarily, and intelligently. After being advised by defense counsel that appellant was despondent and possibly considering suicide, the trial judge stated:
I would add for the record though that I have observed him this morning and this afternoon, and he gives an appearance of being very collective in his thoughts, and that during the plea that was entered it appears to have been an intelligent one and not one made with the appearance of any emotional influence other than of nervousness, of course, as he indicated.
It is clear from these observations that the trial court did not believe any further inquiry into appellant's mental state was necessary. We therefore find no error in the fact that the trial court did not conduct a competency hearing on its own motion.
As a separate point on appeal, appellant argues that his mental state, as evidenced by expressed feelings of despondency and contemplation of suicide, rendered him incompetent to plead guilty. Since we have already found these indications to have been insufficient to require the trial court to order further inquiry into appellant's mental state, they are clearly insufficient to support an appellate court finding that he was in fact incompetent. The record shows that the trial court was correct in finding that appellant understood the charges and the consequences of pleading guilty and that he entered his pleas voluntarily and intelligently. We find no error in the trial court's acceptance of appellant's pleas of guilty.
Appellant's remaining challenge to the convictions is that the trial court erred in denying his motion to suppress his confession. He argues that the confession was a product of an unconstitutional warrantless arrest and was obtained while he was illegally held without a prompt probable cause determination. Although appellant, being under a sentence of death, is entitled to "review" of not only his sentence of death but also his judgment of conviction under section 921.141(4), we nevertheless hold that by entering pleas of guilty he waived, abandoned, or failed to preserve for review the question of the admissibility of his confession. Normally one who pleads guilty is not entitled to appeal the conviction entered pursuant to the plea or court rulings made prior to entering the plea, except where there is a question as to the validity of the plea itself. Robinson v. State, 373 So.2d 898 (Fla. 1979); see also Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). We see no reason to make an exception in this case.
*1240 We turn now to the sentence of death. We first dispense with appellant's arguments that the capital sentencing statute is unconstitutional and that prospective jurors were improperly excused for cause due to their views on capital punishment as these arguments are without merit. However, we do find merit in the argument that the sentence of death is tainted by the consideration by judge and jury of improper aggravating circumstances.
The trial judge's sentencing findings are set out above. First, we find that the trial court erred in finding that in committing the murder appellant knowingly created a great risk of death to many persons. The evidence showed that the murder victim was the only person inside the store when appellant and his accomplices entered it. The finding was based on evidence that before going to the store where the murder took place, appellant fired the weapon from inside a moving car. This incident, though it was admissible in evidence as part of the res gestae of the offense, should not have been relied on to establish this aggravating circumstance because it was not directly related to the capital felony. See Elledge v. State, 346 So.2d 998 (Fla. 1977).
The trial judge's findings included reference to the shooting of Linda Gray at the first gasoline station as unnecessary, pitiless, and cruel. This observation was a part of the judge's findings on aggravating circumstances. Furthermore, the state was allowed to present detailed testimony to the jury about the surviving victim's shooting, the injuries she received, and the pain she suffered. Section 921.141(5)(h) provides that there is an aggravating circumstance where "[t]he capital felony was especially heinous, atrocious, or cruel." Acts committed independently from the capital felony for which the offender is being sentenced are not relevant to question of whether the capital felony itself was especially heinous, atrocious, or cruel. See Elledge v. State; Halliwell v. State, 323 So.2d 557 (Fla. 1975). Therefore it was error to allow such detailed testimony about the shooting of Linda Gray and its consequences and to consider the evidence in finding an aggravating circumstance.
The trial judge's findings also referred to appellant's lack of remorse as an aggravating factor after allowing testimony and argument on lack of remorse to go to the jury. Lack of remorse is not a statutory aggravating circumstance nor was it relied upon here merely as evidence of some valid aggravating circumstance. See McCampbell v. State, 421 So.2d 1072 (Fla. 1982). Moreover, we have held that under the statute it is error to consider lack of remorse for any purpose in capital sentencing. Pope v. State, 441 So.2d 1073 (Fla. 1983).
The trial judge's findings do not disclose whether he gave any consideration to defense counsel's request that the aggravating circumstances of commission during a robbery and commission for pecuniary gain be considered as a single aggravating circumstance. Such merger is required by Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977).
In general, the trial court's findings are replete with statements that are not specifically linked to any statutory aggravating circumstance. While some of the findings may properly relate to statutory aggravating circumstances, the lack of clarity makes it difficult for us to sort out the relevant and sufficient findings from the irrelevant or insufficient ones. We have noted several infirmities in the trial judge's findings. In effect the trial judge went beyond the proper use of statutory aggravating circumstances in his sentencing findings and the sentence of death cannot stand. See Proffitt v. Wainwright, 685 F.2d 1227 (11th Cir.1982), cert. denied, ___ U.S. ___, ___ 104 S.Ct. 508, 509, 78 L.Ed.2d 697, 698 (1983); Brown v. State, 381 So.2d 690 (Fla. 1980), cert. denied, 449 U.S. 1118, 101 S.Ct. 931, 66 L.Ed.2d 847 (1981).
We find further that because the jury heard evidence and argument that did not *1241 properly relate to any statutory aggravating circumstance the jury recommendation is tainted. Appellant is entitled to a new sentencing trial.
The judgments of conviction for first-degree murder and the other crimes are affirmed. The sentence of death is reversed and the case is remanded for a new sentencing proceeding before a jury empaneled for that purpose.
It is so ordered.
BOYD, C.J., and OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, J., concurs in the convictions, but dissents from the sentence.