649 So.2d 861 (1994)
Gary Richard WHITTON, Appellant,
v.
STATE of Florida, Appellee.
No. 80536.
Supreme Court of Florida.
December 1, 1994.
Rehearing Denied February 14, 1995.
*862 Nancy A. Daniels, Public Defender and Paula S. Saunders, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Mark C. Menser, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Gary Richard Whitton appeals his convictions and sentences for first-degree murder and robbery, including his sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution, and affirm both the convictions and sentences.
The evidence presented at trial revealed that Whitton and James S. Mauldin met each other in March 1989, while receiving alcohol treatment at a halfway house in Pensacola. After leaving the halfway house, they continued to see each other at occasional Alcoholics Anonymous meetings. On October 6, 1990, Mauldin arrived at Whitton's Pensacola home in a taxicab. Whitton then gave Mauldin a ride to the halfway house where they originally met. On Sunday October 7, an intoxicated Mauldin returned to Whitton's home. He stayed with Whitton that day, as well as Monday, October 8.
*863 On October 8, Whitton drove Mauldin to a bank in Destin so Mauldin could withdraw some money. The two men went to Mauldin's bank in Destin rather than a bank in Pensacola because Mauldin had lost his passbook and he believed he needed it to withdraw money from a bank other than his own. Mauldin's bank was closed when the two men arrived, but they returned to the bank on October 9. Upon their arrival, a teller told Mauldin he could not make a withdrawal without his passbook. Upset by this information, Mauldin closed his account and obtained $1135.88 in cash. Whitton assisted Mauldin in completing the transaction because Maudlin, who was apparently intoxicated, was unable to complete it himself.
Whitton then took Mauldin to a motel in Destin at Mauldin's request. Whitton completed the motel registration forms due to Mauldin's intoxication, but provided the motel clerk with false information about his own vehicle's license plate number. The motel clerk noticed the discrepancy and put Whitton's correct license plate number on the form. Whitton then assisted Mauldin to his room and left the motel sometime before noon.
Whitton originally told investigators that he did not revisit Mauldin that night. He later admitted returning to the motel and stated that he did so to tell Mauldin his mother was looking for him. Whitton claimed Mauldin was dead when he arrived and that he remained in the room for only a few moments. The motel clerk, however, testified that he saw Whitton's car arrive at approximately 10:30 p.m. that night and leave at around 12:30 a.m.
The same motel clerk discovered Mauldin's body the next day. An officer called to the scene testified that Mauldin's pockets had been turned inside out and that no money, other than a few coins, remained in the room. The officer testified that the blood found throughout the room made it appear as though a struggle had taken place. Blood spatter evidence confirmed the officer's conclusion. An expert in bloodstain analysis testified that the initial bloodshed began on the south bed, then continued to the foot of that bed, then to the floor between the beds, and finally ended between the north bed and north wall.
An autopsy revealed that Mauldin sustained numerous injuries during the attack which caused his death. Mauldin's skull was fractured and he suffered stab wounds to his shoulder, cheek, neck, scalp, and back. In addition, Mauldin sustained three fatal stab wounds to the heart. The medical examiner testified that these wounds prevented Mauldin's heart from beating properly and, consequently, caused his death. The medical examiner also testified that Mauldin had wounds to his arms and hands consistent with his attempting to defend himself. Accordingly, the medical examiner concluded that Mauldin was conscious during the attack, although a blood alcohol test indicated Mauldin's blood alcohol level was .34 at the time of death.
The correct license plate number ascertained by the alert motel clerk led the police to Whitton's home. At approximately 1:30 a.m. on October 11, several officers knocked on Whitton's door after observing his car parked outside the house. Whitton invited the officers inside. Although the officers explained that Whitton was not under arrest and that he was not required to answer their questions, Whitton agreed to talk with them. After about twenty minutes, during which Whitton changed from his night clothes, he also agreed to accompany the officers to the police station. At the police station, several officers continued questioning Whitton regarding Mauldin's death until he invoked his right to remain silent.
A subsequent search of Whitton's home revealed a pair of boots stained with blood matching Mauldin's blood type. A search of his car revealed blood stains matching Mauldin's blood type, as well as receipts indicating that Whitton paid several overdue bills on October 10. In addition, a receipt indicating that Whitton obtained a car wash on October 10 at 2:37 a.m. was found in his car. Consequently, Whitton was charged with first-degree murder and robbery.
While incarcerated and awaiting trial, Whitton confessed to another inmate that he went back to the motel the night Mauldin *864 was murdered to get the money Mauldin had withdrawn from the bank, that a fight ensued, and that he stabbed and killed Mauldin. Whitton told the inmate he had to commit the murder in order to prevent Mauldin from testifying against him in any parole violation proceeding that might occur as a result of the robbery. This confession was overheard by a third inmate and both inmates testified at Whitton's murder trial. A jury found Whitton guilty of murder and robbery.
In the penalty-phase proceeding the jury unanimously recommended the death sentence. The trial judge followed the jury's recommendation and sentenced Whitton to death for the murder conviction and to a consecutive nine-year sentence for the robbery conviction. In support of the death penalty the judge found five aggravating factors: (1) Whitton committed the crime while on parole for a 1981 armed robbery conviction;[1] (2) Whitton was previously convicted of another felony involving the use or threat of violence;[2] (3) the crime was committed to avoid arrest;[3] (4) the crime was committed for pecuniary gain;[4] and (5) the crime was heinous, atrocious, or cruel.[5] The judge also found a number of nonstatutory mitigating factors[6] but determined they did not outweigh the aggravating factors.
In this appeal, Whitton raises two issues relating to his convictions[7] and five issues relating to his sentence.[8] We find that only three of these issues merit full discussion.
First, we address Whitton's claim that the state violated Whitton's privilege against self-incrimination by commenting three separate times on his post-arrest silence. All three comments pertained to Whitton's invocation of his right to remain silent after he admitted he was present at the motel the night Mauldin was murdered. Whitton, however, only objected to the final comment made during the prosecutor's closing argument. The prosecutor stated:
But in the last part of that interview, before the defendant says "I'm not talking to you anymore," he tells him, "I went back over there, I walked in, and I saw my friend dead and I left." Then he doesn't say anything else. He realizes at that point, "Uh-oh."
We agree this statement is fairly susceptible of being interpreted by the jury as a comment on silence and, therefore, conclude that the trial court properly sustained the defense's objection to the comment. See State v. Kinchen, 490 So.2d 21 (Fla. 1985). However, we also approve the trial court's denial of defense counsel's subsequent motion for mistrial because our examination of the record indicates that there is no reasonable possibility that the improper comment contributed to Whitton's conviction. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986).
Although Whitton did not object to the first two alleged comments on Whitton's post-arrest silence, he argues that the cumulative impact of all three comments requires *865 reversal. We agree that we must consider all three comments in our harmless error analysis because the harmless error test requires an examination of the entire record. The reviewing court must examine both the permissible evidence on which the jury could have legitimately relied and the impermissible evidence which might have influenced the jury's verdict. DiGuilio, 491 So.2d at 1135.
In applying the harmless error test to this case we find that the record contains a substantial amount of permissible evidence that conclusively proves Whitton's guilt. Whitton, as well as several other witnesses, testified that he was with Mauldin the day of the murder and returned to Mauldin's room later that night. Although Whitton claimed he remained in Mauldin's room for only a few moments after discovering Mauldin's body, the motel clerk testified that he saw Whitton's car outside the room that night for approximately a two-hour period. Whitton himself told several investigating officers that he had not loaned his car to anyone during this period. In addition, two inmates testified that Whitton admitted killing Mauldin. One of the inmates testified that Whitton told him he returned to the motel to rob Mauldin and then "killed the bastard."
There is, likewise, physical evidence upon which a jury could rely in finding Whitton guilty. Police found blood matching Mauldin's blood type in Whitton's car and on Whitton's boots. The search of Whitton's car uncovered receipts indicating that Whitton had paid off several overdue bills following Mauldin's murder. Although Whitton denied using any of Mauldin's money to pay those bills, police did not find the money Mauldin had withdrawn from his bank either on his body or in his room. Based on the totality of the evidence, there was, therefore, an appropriate basis upon which the jury could conclude beyond a reasonable doubt that Whitton murdered Mauldin during the course of robbing him.
In our harmless error review we have also closely scrutinized what Whitton asserts is the impermissible evidence to determine whether or not there is a reasonable possibility that it could have influenced the jury. The first of the two testimonial comments which Whitton argues constituted a comment on his silence came during the testimony of investigator Allen Cotton. Cotton stated that "once we were getting much closer to what we felt was the truth and we were tightening down on him being at the murder scene, he decided he did not want to talk to us anymore." The other testimony to which Whitton now objects came during the prosecution's recross-examination of Whitton where the following exchange took place:
Q. And what did you do when you told him, what did you do after that when you told him you didn't go back there?
A. I told him 
Q. You didn't say anymore did you?
A. Excuse me?
Q. You didn't say anymore then did you?
A. No, I did tell him after awhile that I did go back there.
Q. And then you told him that, then you didn't say nothing else.
A. No, sir.
The third comment came during the prosecutor's closing argument and after the testimonial comments regarding Whitton's silence were already in evidence without objection. Thus, even if the trial court failed to sustain defense counsel's objection, any error would have been harmless. See Huff v. State, 495 So.2d 145 (Fla. 1986); Wyatt v. State, 578 So.2d 811 (Fla.3d DCA), review denied, 587 So.2d 1331 (1991). But here the trial court sustained Whitton's objection to the prosecutor's comment and considered Whitton's cumulative impact theory in reviewing the motion for mistrial. We agree with the trial court that, in the context of the totality of the evidence, the cumulative effect of the two testimonial statements and the prosecutor's comment did not prejudice Whitton's right to a fair trial. See Palmes v. State, 397 So.2d 648 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 369, 70 L.Ed.2d 195 (1981); DiGuilio, 491 So.2d at 1135. It is our conclusion that there is no reasonable possibility that the prosecutor's comment or the cumulative effect of that comment and the two testimonial comments contributed to Whitton's conviction. We therefore approve the trial court's *866 decision sustaining defense counsel's objection to the prosecutor's comment and denying defense counsel's motion for mistrial.
As his final point relating to his convictions, Whitton alleges that the trial court erred in failing to consider the Fourth Amendment when it ruled that Whitton's post-Miranda statements were knowingly and voluntarily made and, thus, admissible. In particular, he asserts that his arrest was illegal because he was seized in his home without a warrant or probable cause and his statements made in connection with the arrest were therefore presumptively tainted. We decline to address this issue because our review of the record reveals that Whitton did not raise it at trial or preserve it for appeal.
Our review of the record also reveals that it contains sufficient competent evidence supporting Whitton's convictions. Accordingly, we affirm his convictions and move on to consider Whitton's penalty-phase claims.
The first of Whitton's penalty-phase claims meriting discussion pertains to the heinous, atrocious, or cruel aggravating factor. In support of this aggravating factor the trial judge found:
The victim is considerably larger than the Defendant. The two had gotten into a fight earlier in the day and the victim had gotten the best of the Defendant. The Defendant left the motel, went to his home in Pensacola, and then late in the evening returned to the motel room for the purpose of robbing the victim. The victim was beaten to death with a multitude of blows. The first injury occurred on the south bed in the motel room; the evidence shows that the victim was not rendered unconscious by that blow because he moved from his prone position on the south bed, to a chair at the foot of that bed, around the foot of the north bed, and that he finally died as he lay between the north bed and the north wall. The Medical Examiner testified that although he could not precisely measure the duration of the beating, he would estimate it at thirty minutes. The blood throughout the room was evidence of a violent combat. There was blood on the floor, furniture, walls, and even the ceiling. There were overlays of blood splatters in several locations. The massive wounds on the neck and side of the victim's face would cause significant bleeding. There were defensive wounds on the victim's hand and arm. The victim had a blood alcohol level of .34; however, it is clear from the physical evidence that he was sufficiently aware of his impending death to put up a tremendous resistance. Even though the victim's system was depressed by alcohol, the victim felt pain and was aware of his impending death as is evidenced by the manner in which his adrenaline obviously overrode his drunkenness and allowed him to resist the Defendant even after sustaining massive blows that would have brought down a drunk elephant. The crime scene photographs are a gruesome testimony to the amount of blood in the human body and the victim's tenacity for life. This murder was extremely wicked and vile and inflicted a high degree of pain and suffering on the victim. The Defendant acted with utter indifference to the suffering of his victim. This murder was accompanied by such additional acts which sets this crime apart from the normal capital felonies. It was indeed a conscienceless, pitiless crime which was unnecessarily torturous to the victim. The aggravating factor that the capital felony was especially heinous, atrocious, or cruel has been proved beyond a reasonable doubt.
Whitton claims that these findings of fact were not proven beyond a reasonable doubt. He contends that the evidence presented demonstrated that the murder occurred rapidly and that Mauldin's intoxication or the blows to Mauldin's head would have rendered him unconscious or semiconscious throughout the attack.
We recently held a claim similar to Whitton's invalid in Taylor v. State, 630 So.2d 1038 (Fla. 1993), cert. denied, ___ U.S. ___, 115 S.Ct. 107, 130 L.Ed.2d 54 (1994). There, the victim was stabbed twenty times, sustained twenty-one other wounds including several blows to the head, and finally died as a result of strangulation. Although the medical examiner in that case admitted he did not know whether the victim was conscious *867 during the attack, we concluded that the record supported a finding that the murder was heinous, atrocious, or cruel.
The record in this case similarly supports the trial judge's finding that the murder was heinous, atrocious, or cruel. Although the medical examiner described the attack as a rapid event, he concluded, based on the victim's movement from the first to the final blow, that it lasted approximately thirty minutes. Cf. Elam v. State, 636 So.2d 1312 (Fla. 1994) (concluding that the trial court erred in finding the heinous, atrocious, or cruel aggravating factor where the medical examiner testified that the attack took place in a period of a minute or less). In addition, the medical examiner testified that the head wounds sustained by Mauldin would have caused rapid unconsciousness. Logically, these wounds could not have come at the onset of the attack as Whitton contends. Rather, Whitton's defensive wounds and the trail of blood reflecting Mauldin's movement indicate that the blows to the head must have come late in the attack.
The defensive wounds and blood trail also indicate that, although clearly intoxicated, Mauldin was aware of what was happening to him. The medical examiner explained that Mauldin's tolerance and his adrenaline reaction could have diminished the effect of the alcohol. Consequently, the medical examiner concluded that, despite Mauldin's intoxicated state, he would have felt pain as a result of the injuries he sustained. We therefore find that the heinous, atrocious, or cruel aggravating factor was clearly supported by the evidence and leave the trial court's determination on this aggravating factor undisturbed. See Perry v. State, 522 So.2d 817 (Fla. 1988); Taylor.
Whitton next contends the trial court erred in finding the avoiding arrest aggravating factor. The trial court based its finding on the statement Whitton made to a cellmate in which he admitted killing Mauldin to insure Mauldin would not be a witness against him. Specifically, Whitton told the cellmate he eliminated Mauldin so he would not get caught violating his parole. We have found the avoiding arrest aggravator present in other cases where the defendant's own statements establish a basis for the trial court's conclusion that the appellant's predominant motive for murdering the victim is elimination of a witness. See Remeta v. State, 522 So.2d 825 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988); Lopez v. State; 536 So.2d 226 (Fla. 1988); Kokal v. State, 492 So.2d 1317 (Fla. 1986); Pope v. State, 441 So.2d 1073 (Fla. 1983). Likewise, we find the evidence in this case sufficient to support the avoiding arrest aggravator.
With respect to Whitton's remaining claims we reach the following conclusions. We find Whitton's claims regarding the constitutionality of the heinous, atrocious, or cruel instruction[9] and the avoiding arrest aggravator[10] without merit. In addition we reject Whitton's proportionality claim. All five aggravating factors are clearly supported by the record, whereas no statutory mitigating factors were found. Accordingly, we find that the death sentence is the appropriate penalty in this case and affirm the convictions and sentences imposed upon Whitton by the trial court.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] § 921.141(5)(a), Fla. Stat. (Supp. 1990).
[2] § 921.141(5)(b), Fla. Stat. (Supp. 1990).
[3] § 921.141(5)(e), Fla. Stat. (Supp. 1990).
[4] § 921.141(5)(f), Fla. Stat. (Supp. 1990).
[5] § 921.141(5)(h), Fla. Stat. (Supp. 1990).
[6] The judge found nine mitigating factors: (1) Whitton suffered a deprived childhood and poor upbringing; (2) Whitton was abused as a child; (3) Whitton was abused by his two alcoholic parents; (4) Whitton was a hard worker when employed; (5) Whitton had shown potential for rehabilitation; (6) Whitton had performed various humanitarian deeds; (7) Whitton was an alcoholic; (8) Whitton had an unstable personality consistent with alcoholism and child abuse; (9) Whitton is a human being and child of God.
[7] Whitton alleges: (1) the trial court erred in denying Whitton's motion for mistrial after the prosecutor commented on his post-arrest silence during closing argument; and (2) the trial court erred in denying in part Whitton's motion to suppress statements he made to officers because the statements were allegedly the product of an illegal arrest.
[8] Whitton alleges: (1) the heinous, atrocious, or cruel instruction provided by the court was unconstitutionally vague; (2) the trial court erred in finding that the murder was especially heinous, atrocious, or cruel; (3) the trial court erred in failing to give a limiting instruction with respect to the avoiding arrest circumstance; (4) the trial court erred in finding that the murder was committed to avoid arrest; (5) the death sentence is not proportionate in this case.
[9] In Hall v. State, 614 So.2d 473 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 109, 126 L.Ed.2d 74 (1993), we approved the heinous, atrocious, or cruel instruction given by the trial court in this case. Whitton has not presented an adequate reason for us to recede from that decision.
[10] The avoiding arrest factor, unlike the heinous, atrocious, or cruel factor, does not contain terms so vague as to leave the jury without sufficient guidance for determining the absence or presence of the factor. Accordingly, Espinosa v. Florida, ___ U.S. ___, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), and its progeny do not require a limiting instruction in order to make this aggravator constitutionally sound.