664 So.2d 939 (1995)
Troy MERCK, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 83063.
Supreme Court of Florida.
October 12, 1995.
Rehearing Denied December 22, 1995.
*940 James Marion Moorman, Public Defender and Steven L. Bolotin, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General and Robert J. Landry, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing a death sentence upon Troy Merck, Jr. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Merck was convicted of first-degree murder of the victim, James Anthony Newton. Newton died after Merck repeatedly stabbed him while the two men were in the parking lot of a bar in Pinellas County shortly after 2 a.m. on October 12, 1991. The bar had closed at 2 a.m., and several patrons of the bar remained in the parking lot. The evidence was that several of these individuals, including the victim, Merck, and those who witnessed the murder, had consumed a substantial amount of alcohol during the evening while at the bar.
After closing, Merck and his companion, both of whom had recently come to Florida from North Carolina, were in the bar's parking lot. The two were either close to or leaning on a vehicle in which several people were sitting. One of the car's occupants asked them not to lean on the car. Merck *941 and his companion sarcastically apologized. The victim approached the car and began talking to the car's owner. When Merck overheard the owner congratulate the victim on his birthday, Merck made a snide remark. The victim responded by telling Merck to mind his own business. Merck attempted to provoke the victim to fight; however, the victim refused.
Merck then asked his companion for the keys to the car in which he had come to the bar. At the car, Merck unlocked the passenger-side door and took off his shirt and threw it in the back seat. Thereafter, Merck approached the victim, telling the victim that Merck was going to "teach him how to bleed." Merck rushed the victim and began hitting him in the back with punches. The person who had been talking to the victim testified that she saw a glint of light from some sort of blade and saw blood spots on the victim's back. The victim fell to the ground and died from multiple stab wounds; the main fatal wound was to the neck.
Merck was indicted on November 14, 1991, for the first-degree murder of James Anthony Newton. The case went to trial and ended in a mistrial on November 6, 1992, because the jury was unable to reach a verdict. After a second trial, Merck was found guilty as charged. The jury recommended death by a vote of nine to three. The trial judge found two aggravating factors: (1) the murder was especially heinous, atrocious, or cruel;[1] and (2) previous conviction of felonies involving the use or threat of violence.[2] The court found no statutory mitigating factors and two nonstatutory mitigating factors: (1) abused childhood; and (2) alcohol use on the night of the offense. The trial court sentenced Merck to death.
On appeal, Merck presents five claims: (1) the trial court erred in imposing the death sentence; (2) the death sentence is invalid because the jury heard and the trial judge considered highly prejudicial testimony not relating to any statutory aggravating circumstance; (3) the trial court erred in denying Merck's motion for mistrial based upon a State witness's reference to the first trial of this case; (4) Merck's conviction must be vacated as a result of the State's bad-faith failure to preserve potentially exculpatory evidence; and (5) the trial court erred in giving the jury an unconstitutionally vague and overbroad instruction on the "especially heinous, atrocious, or cruel" aggravating factor.

GUILT PHASE
Issues 3 and 4 raised by Merck relate to the guilt phase of the trial. We do not find merit in either issue and affirm Merck's conviction.
With respect to issue 3, we find that there was no abuse of discretion in denying Merck's motion for mistrial based upon inadvertent reference by Deputy Sheriff Nestor, the case agent detective, to the first trial of this case. The reference was isolated and appears to have been inadvertent. The trial court had ordered in limine that there be no reference to the first trial, in which the jury had been unable to reach a verdict. Detective Nestor was the State's witness, and during cross-examination by Merck's counsel, the following colloquy occurred:
Q. Have you seen the videotape by the way?
A. No, not recently I have not.
Q. Have you ever seen it?
A. Back before the last trial, yes.
Q. Is it fair  does it fairly, accurately depict what  when you say, you talk about the last hearing that we had in this case?
A. Yes, sir.
Q. Does it fairly, accurately depict what went on at the time?
A. Yes.
The record reflects that Merck's counsel properly responded to this statement by not drawing attention to it. The trial court was well within its discretion to determine that the statement did not prevent Merck from having a fair trial. Power v. State, 605 So.2d 856 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1863, 123 L.Ed.2d 483 (1993).
*942 In issue 4, Merck asserts that the failure on the part of Detective Nestor to keep as evidence a pair of khaki pants located during the search of the vehicle abandoned by Merck and his companion after the murder, was a bad-faith failure to preserve potentially exculpatory evidence, resulting in a denial of due process. In examining the items found in the vehicle, Detective Nestor meticulously looked at every item found in the car, and a videotape was made of the search. Detective Nestor testified that it was his job as the case agent to determine which of these items had evidentiary value. He retained all items that he determined to have evidentiary value, and he left the other items in the vehicle. The vehicle was thereafter available to be picked up by its registered owner. One of the items examined by Detective Nestor was a pair of "baggy khaki colored style pants." Detective Nestor testified that after he examined those pants and found no blood stains on them, he concluded that they did not have evidentiary value and left the pants in the vehicle.
Merck raised this issue in post-trial motions which were acknowledged not to be timely. Merck asserts that the failure to maintain this evidence was fundamental error and, as such, can be raised for the first time post-trial. We do not agree. Here, the failure to preserve the khaki pants was clearly known by Merck prior to and during the trial. The issue was not preserved by timely objection and was not properly the basis for a post-trial attack on the conviction. State v. Matera, 266 So.2d 661 (Fla. 1972).
However, even if there had been a timely presentation of this issue, based upon our review of the record, we conclude that the failure to preserve the khaki pants was not a denial of due process pursuant to Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988), and Kelley v. State, 569 So.2d 754 (Fla. 1990). There is simply no showing that Detective Nestor acted in bad faith in deciding not to preserve pants which had no blood stains. Moreover, Merck has to stack multiple inferences in order to postulate that the pants were either material or exculpatory. Thus, we find no merit in Merck's fourth issue.

PENALTY PHASE
In issue 1, appellant raises three points.

A. Appellant's age, 19, should have been found and weighed in mitigation.
We reject Merck's contention that our decision in Ellis v. State, 622 So.2d 991 (Fla. 1993), is applicable to Merck, who was 19 at the time of this murder. Rather, as we decided in Peek v. State, 395 So.2d 492 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981), the trial court may find or decline to find age as a mitigating factor in respect to a defendant who is 19. In the trial court's sentencing order in this case, the trial court considered but rejected defendant's age as being a mitigating factor. We affirm.

B. The judge should not have found or instructed the jury on the heinous, atrocious, or cruel aggravating factor.
The basis of Merck's argument regarding the second point is that this aggravator is not applicable because this was a sudden attack at a time when both Merck and the victim were intoxicated. The medical examiner testified that the fatal wound to the neck would have caused unconsciousness within two to five minutes and death within five to ten minutes. The victim had a blood alcohol level of .18. Likewise, there was substantial evidence that Merck had consumed a sufficient amount of alcohol to have been intoxicated at the time of the murder. However, there was also evidence that Merck had deliberately twisted the knife blade during the stabbing. Witnesses testified that this stabbing occurred after Merck said to the victim, "I'll show you how to bleed." Death was a result of multiple stab wounds.
We recently rejected a challenge that the heinous, atrocious, or cruel aggravator was not applicable based upon a similar assertion in Whitton v. State, 649 So.2d 861 (Fla. 1994), petition for cert. filed, No. 94-9356 (U.S. May 15, 1995). We believe that the heinous, atrocious, or cruel aggravator was applicable in this case and affirm on this issue.

*943 C. The death sentence is disproportionate.
Merck bases this issue primarily upon the contention in point B that the heinous, atrocious, or cruel aggravator should be stricken. We have rejected that contention and likewise reject the contention that death is disproportionate in this stabbing murder. Whitton; Derrick v. State, 641 So.2d 378 (Fla. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 943, 130 L.Ed.2d 887 (1995); Taylor v. State, 630 So.2d 1038 (Fla. 1993), cert. denied, ___ U.S. ___, 115 S.Ct. 107, 130 L.Ed.2d 54 (1994); Atwater v. State, 626 So.2d 1325 (Fla. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994). We do not find this case similar to Kramer v. State, 619 So.2d 274 (Fla. 1993). The mitigating factors found to exist in Kramer are not found to exist in this case. Id. at 278.
As a separate issue numbered 5, Merck challenges the current standard jury instruction on the heinous, atrocious, or cruel statutory aggravator. We upheld the instruction against similar challenges in Taylor and Hall v. State, 614 So.2d 473 (Fla.), cert. denied, ___ U.S. ___, 114 S.Ct. 109, 126 L.Ed.2d 74 (1993). We affirm.
In Merck's issue 2, he asserts that the death sentence is invalid because the jury heard and the trial court expressly considered testimony concerning Merck shooting in the face a laundromat operator in Sylva, North Carolina, when Merck was 14. In her sentencing order, the trial court found as an aggravating factor the following:
1. F.S. 921.141(5)(b): The defendant was previously convicted of a felony involving the use or threat of violence to the person. The Court finds that this factor was established beyond and to the exclusion of every reasonable doubt. The State presented testimony that on March 15, 1989, the Defendant, TROY MERCK, JR., while armed with a knife, robbed a convenience store in Marion County, Florida. On March 22, 1989, the defendant, TROY MERCK, JR., while armed with a knife, robbed a convenience store in Pasco County, Florida. On March 23, 1989, the defendant, TROY MERCK, JR., while armed with a knife, robbed three separate convenience stores in Lake County, Florida. While no one was injured in any of the five robberies, the store keeper in each convenience store was threatened. The defendant was adjudicated guilty of each of the armed robberies. These are proper aggravating factors.
In addition to the robberies listed above, the defendant, TROY MERCK, JR., while a juvenile, committed an offense of Assault with a Deadly Weapon, in North Carolina. On January 8, 1986, the defendant, TROY MERCK, JR., entered a laundromat operated by Fawn Chastain. When she discovered his presence, Ms. Chastain asked the defendant, TROY MERCK, JR., to leave the premises. As Ms. Chastain went to lock the door behind him, the defendant, TROY MERCK, JR., shot her in the face with a rifle, the bullet lodging in her head. There apparently was no provocation for the assault. The defendant, TROY MERCK, JR., was convicted and adjudicated a delinquent for this offense. This is also a proper aggravating factor under F.S. 921.141(5)(b).
During the penalty phase, the State introduced the judgments and sentences for the five prior felonies involving the use or threat of violence which occurred in the state of Florida. The State thereafter introduced testimony relating to the shooting by Merck of a laundromat operator in North Carolina. Fawn Chastain testified that while she was working in a laundromat in Sylva, North Carolina, on January 8, 1986, Merck intentionally shot her in the face when she would not allow him to enter the laundromat after closing. The State also introduced testimony of the law enforcement officer from the North Carolina State Bureau of Investigation who investigated the shooting. No objection was made to the introduction of this evidence.
The State next sought to introduce the judgment and sentence from the North Carolina case. At this point, Merck objected on the basis that the North Carolina incident was a juvenile adjudication which is not a criminal conviction under North Carolina or Florida law. The trial court sustained this objection. Merck moved for mistrial based *944 on the jury's having heard the testimony of Fawn Chastain and the North Carolina law enforcement officer. Merck's motion for mistrial was denied. Merck sought a curative instruction (no specific instruction was proffered), and the court ruled that a curative instruction would not be appropriate. The trial court instructed the State not to refer to the North Carolina judgment for the remainder of the penalty phase before the jury, and the State complied.
It is clear from the record that the genesis of the error asserted in this issue was counsel's failure to recognize or make the court aware prior to the admission of evidence about the North Carolina shooting that the shooting was a juvenile adjudication, not a "conviction" as defined under North Carolina or Florida statutes. We do note that the trial judge concluded that this error was in fact a good-faith mistake, and not an act on the part of counsel to create error. We accept the trial court's conclusion and approve the procedure followed by the trial judge in conducting the remainder of the jury proceeding.
However, we agree with Merck that the juvenile adjudication was not a conviction within the meaning of section 921.141(5)(b), Florida Statutes (1993). This is expressly mandated in section 39.053, Florida Statutes (1993), and section 7A-638, General Statutes of North Carolina (1993). Despite correctly sustaining the objection to the admissibility of the North Carolina judgment, the trial court erred in stating in her sentencing order, "This is also a proper aggravating factor under F.S. 921.141(5)(b)." We find the inclusion of this juvenile adjudication similar to the erroneous inclusion of community control as an aggravating factor in Trotter v. State, 576 So.2d 691 (Fla. 1990). As noted in Trotter, penal statutes must be strictly construed in favor of the one against whom a penalty is imposed. Id. at 694. We therefore conclude, as we did in Trotter, that a resentencing before a jury is required.
We find this case to be unlike Jones v. State, 440 So.2d 570 (Fla. 1983), because we cannot find that the trial court's inclusion of the North Carolina delinquency adjudication was surplusage. We acknowledge that there was other substantial evidence to support the aggravating factor in section 921.141(5)(b). Nevertheless, from our review of the record we cannot say that the dramatic testimony concerning the North Carolina shooting did not taint the recommendation of the jury. As in Trawick v. State, 473 So.2d 1235 (Fla. 1985), cert. denied, 476 U.S. 1143, 106 S.Ct. 2254, 90 L.Ed.2d 699 (1986), we find this to be an additional reason to require resentencing before a jury.
We distinguish Campbell v. State, 571 So.2d 415 (Fla. 1990), because that case involved "juvenile convictions." Our decision in this case is not to be read to mean that "convictions" of individuals who are juveniles which otherwise come within section 921.141(5)(b) are eliminated from consideration because the individuals are juveniles. Rather, our decision applies only to adjudications of delinquency which by statute are not convictions.
We affirm the conviction and remand for resentencing consistent with this opinion.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN and HARDING, JJ., concur.
WELLS, J., concurs with an opinion.
ANSTEAD, J., concurs as to the conviction, and concurs in result only as to the sentence.
WELLS, Justice, concurring.
I concur in affirming the conviction and in remanding for resentencing. I cannot conclude that the evidence as to the North Carolina shooting did not substantially influence the jury.
I write to express my concern about an issue which is unclear in the record. Merck was sentenced to four years in prison on October 9, 1989, six years in prison on October 31, 1989, and five years in prison on March 28, 1990. The murder for which he is here convicted occurred on October 12, 1991. Why then was section 921.141(5)(a), Florida Statutes (1993), not applicable to Merck at the time of this murder?
*945 I do note that if Merck was on parole, or if his order of probation included as a condition a term of incarceration and this murder was committed while Merck was or should have been incarcerated, he would have been under a sentence of imprisonment within the meaning of section 921.141(5)(a). See Peek v. State, 395 So.2d 492 (Fla. 1980), cert. denied, 451 U.S. 964, 101 S.Ct. 2036, 68 L.Ed.2d 342 (1981). Upon remand, the resentencing will be governed by the "clean slate" rule, and this issue should therefore be considered. See Preston v. State, 607 So.2d 404, 408 (Fla. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 1619, 123 L.Ed.2d 178 (1993).
If the explanation is that Merck was out of jail because of an early release program, this case highlights why truth in sentencing is critical to the proper administration of justice.
NOTES
[1] § 921.141(5)(h), Fla. Stat. (1993).
[2] § 921.141(5)(b), Fla. Stat. (1993).