571 So.2d 415 (1990)
James CAMPBELL, Appellant,
v.
STATE of Florida, Appellee.
No. 72622.
Supreme Court of Florida.
June 14, 1990.
Rehearing Denied December 13, 1990.
*416 Geoffrey C. Fleck of Friend, Fleck & Gettis, South Miami, for appellant.
Robert A. Butterworth, Atty. Gen., and Michael J. Neimand, Asst. Atty. Gen., Miami, for appellee.
SHAW, Justice.
James Campbell appeals his convictions of first-degree murder, attempted first-degree murder, burglary, robbery, and displaying a weapon, and his sentences of death and consecutive life terms of imprisonment. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the convictions and sentences, with the exception of the death penalty.
At about 2:15 p.m. on December 22, 1986, Sue Zann Bosler and her father, Billy, returned home from shopping. While in the bathroom, Sue Zann heard the doorbell ring, heard the door open, and then heard *417 her father make grunting and groaning sounds. When she went to investigate, she saw her father being stabbed a number of times by an unknown attacker. She made a noise and the assailant approached her and stabbed her in the back three times as she turned away before being knocked to the floor. The assailant returned to her father, stabbing him in the back many times as he fell to the floor. When Sue Zann tried to help her father, the assailant backed her into another room and stabbed her in the head several times. She fell to the floor, pretending to be dead. The attacker rummaged through the house and searched Billy's pockets and Sue Zann's purse, taking an undetermined amount of money before leaving. Billy died; Sue Zann lived.
Sue Zann gave a description of the attacker and police determined that he probably had a badly cut hand. A week later, while responding to a call at a convenience store, James Campbell was seen by police peering into an unoccupied police car, with his hand on the driver's door. When asked what he was doing, Campbell gave no explanation. A background check indicated that he was wanted on two outstanding juvenile warrants. While handcuffing Campbell, the officer noticed that his hand had been badly cut. At the police station, Campbell was read his rights and questioned concerning the Bosler homicide. He eventually confessed and gave a written statement, saying that he went to the Bosler house with a knife, that he planned to rob the occupants, and that he stabbed and robbed Billy and Sue Zann. Sue Zann identified Campbell's photograph from a photo lineup.
Campbell was charged with first-degree murder, attempted first-degree murder, burglary with a dangerous weapon, robbery with a deadly weapon, battery on a policeman, and displaying a weapon during a felony. His motions to suppress his confessions, out-of-court and in-court identifications, and physical evidence were denied. At trial, police experts testified that his fingerprints and blood samples matched those found at the scene. Sue Zann testified as to the events of the day and identified Campbell as her assailant. He was found guilty on all charges except battery on a policeman. The jury voted nine to three in favor of the death penalty. The judge followed the jury recommendation and imposed the death penalty based on a finding of five aggravating factors (prior conviction of a felony involving force; committed during burglary and robbery; committed for pecuniary gain; committed in a particularly heinous, atrocious, or cruel manner; committed in a cold, calculated, and premeditated manner) and one nonstatutory mitigating factor (requests by Sue Zann and members of Billy's parish that his life be spared).
Campbell argues that the confessions, identifications, and physical evidence should have been suppressed for three reasons: The police had no grounds to stop him; they had no grounds to take him into custody; and because of his low intelligence, he could not have intelligently waived his rights. We disagree. Officers, responding to a call concerning a man with a gun behind a convenience store, spotted Campbell apparently trying to break into a police car behind the store. They thus had grounds to stop him. A name check revealed two outstanding juvenile warrants. Campbell argues that under sections 39.02(4) and .40(2), Florida Statutes (1985), the juvenile court loses jurisdiction when a child reaches eighteen (in dependency cases) and nineteen (in delinquency cases), that Campbell was twenty when arrested here, and thus the pickup orders that had been issued three years earlier were void and the arrest unlawful. The orders, however, were valid when issued and remained valid until successfully challenged or revoked by the court. The police had no choice but to pick up Campbell; they were required by court order to do so. As to Campbell's waiver of his rights, mental weakness is but one factor to be weighed in determining voluntariness. Kight v. State, 512 So.2d 922 (Fla. 1987), cert. denied, 485 U.S. 929, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988) (waiver lawful where defendant had I.Q. of 69). The record shows Campbell *418 was aware of his rights and the consequences of waiver.
After instructing the jury on first-degree premeditated murder, the court charged the jury on first-degree felony murder. It then repeated the felony murder instruction. Later, the court instructed on attempted murder which it also repeated. It did the same for the terms "dangerous weapon" and "reasonable doubt." Campbell claims that this repetition and additional statements by the court gave the impression that the court believed Campbell was guilty. We disagree. The repeated instructions were made in response to juror puzzlement ("I see puzzled looks on your faces.") and correctly stated the law without unduly emphasizing a particular aspect of the proceeding. There was no error. Campbell asserts that the court should not have allowed the serology expert to testify on knife slippage. The forensic serologist testified that when a knife with a bloody handle hits a bone, the grip may slip and the holder may cut his hand. The expert was testifying within his field on the fluid nature of blood; he was also testifying on a subject upon which he possessed a working knowledge  the effect of blood on a weapon. See Johnson v. State, 497 So.2d 863 (Fla. 1986) (although never qualified as an expert, police officer had working knowledge of blood detection testing). Campbell's claim that the deceased was never properly identified because a witness said he was "Bowman" was not preserved for review on appeal.
Campbell claims that the court erred in its findings relative to aggravating and mitigating circumstances. The court correctly found that Campbell was previously convicted of a felony involving the use or threat of violence. He cites no authority in support of his assertion that prior juvenile convictions cannot be considered in aggravation. Commission of a capital felony in the course of an armed robbery and burglary, and for pecuniary gain should have been counted as one, not two, factors, where the offense underlying the burglary was robbery. See Maggard v. State, 399 So.2d 973 (Fla.), cert. denied, 454 U.S. 1059, 102 S.Ct. 610, 70 L.Ed.2d 598 (1981); Riley v. State, 366 So.2d 19 (Fla. 1978). The finding that the killing was particularly heinous, atrocious, or cruel was proper. Billy was stabbed twenty-three times over the course of several minutes and had defensive wounds. See Hansborough v. State, 509 So.2d 1081 (Fla. 1987) (thirty stab wounds, including defensive wounds, is sufficient to establish that the killing was particularly heinous, atrocious, or cruel).
We disagree with the court's finding that the stabbing was committed in a cold, calculated, and premeditated manner. The state argues that because Campbell stabbed Billy, then stopped when he attacked Sue Zann, and then returned to stabbing Billy, he had time to reflect upon and plan his resumed attack on Billy. See Swafford v. State, 533 So.2d 270 (Fla. 1988), cert. denied, 489 U.S. 1100, 109 S.Ct. 1578, 103 L.Ed.2d 944 (1989) (cold, calculated, and premeditated aggravating circumstance present where defendant shot victim, reloaded, then resumed shooting). This factor generally is reserved for cases showing "a careful plan or prearranged design." Rogers v. State, 511 So.2d 526, 533 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). Campbell's actions took place over one continuous period of physical attack. His assault on Sue Zann provided him with no respite during which he could reflect upon or plan his resumption of attack on Billy, unlike the situation in Swafford wherein the act of reloading the gun provided a break in the attack.
As to mitigating factors, the trial judge concluded that Campbell did not suffer from impaired capacity under section 921.141(6)(f), Florida Statutes (1985), because no evidence indicated that he was "insane" at the time of the killing.[1] "The finding of sanity, however, does not eliminate *419 consideration of the statutory mitigating factors concerning mental condition." Mines v. State, 390 So.2d 332, 337 (Fla. 1980). Evidence of impaired capacity was extensive and unrefuted  Campbell's I.Q. was in the retarded range; he had poor reasoning skills; his reading abilities were on a third-grade level; he suffered from chronic drug and alcohol abuse; and he was subject to a borderline personality disorder. We note that he attempted suicide while in jail and subsequently was placed on Thorazine, a high potency antipsychotic drug. The trial court erred in failing to recognize the presence of this mitigating circumstance. Cf. id. at 337 (where "[t]he evidence clearly establishes that appellant had a substantial mental condition... . [t]he trial court erred" in rejecting impaired capacity as a mitigator).
We similarly conclude that the court wrongly rejected Campbell's deprived and abusive childhood as a mitigating factor.[2] The record reveals that while in his parents' care he suffered extreme abuse, e.g., he required hospital treatment after being hit with a telephone, and was observed "covered with bruises." As a child, he was subjected to such extensive mistreatment that he was declared a dependent and removed permanently from his parents' home.
As this case demonstrates, our state courts continue to experience difficulty in uniformly addressing mitigating circumstances under section 921.141(3), Florida Statutes (1985), which requires "specific written findings of fact based upon [aggravating and mitigating] circumstances." Federal caselaw additionally states that
[j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence.... The sentencer, and the [appellate court], may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration.
Eddings v. Oklahoma, 455 U.S. 104, 114-15, 102 S.Ct. 869, 876-77, 71 L.Ed.2d 1 (1982) (emphasis and footnote omitted). We provide the following guidelines to clarify the issue.
When addressing mitigating circumstances, the sentencing court must expressly evaluate in its written order each mitigating circumstance proposed by the defendant[3] to determine whether it is supported by the evidence and whether, in the case of nonstatutory factors, it is truly of a mitigating nature. See Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988). The court must find as a mitigating circumstance each proposed factor that is mitigating in nature[4] and has been reasonably established by the greater weight of the evidence:[5] "A mitigating circumstance need not be proved beyond a reasonable doubt by the defendant. If you are reasonably convinced that a mitigating circumstance exists, you may consider it as *420 established." Fla.Std.Jury Instr. (Crim.) at 81. The court next must weigh the aggravating circumstances against the mitigating and, in order to facilitate appellate review, must expressly consider in its written order each established mitigating circumstance. Although the relative weight given each mitigating factor is within the province of the sentencing court, a mitigating factor once found cannot be dismissed as having no weight. To be sustained, the trial court's final decision in the weighing process must be supported by "sufficient competent evidence in the record." Brown v. Wainwright, 392 So.2d 1327, 1331 (Fla. 1981). Hopefully, use of these guidelines will promote the uniform application of mitigating circumstances in reaching the individualized decision required by law.
Based on the foregoing, we affirm the convictions and the sentences, with the exception of the death penalty, which we vacate. On the murder conviction, we remand for resentencing before the judge so that he can evaluate and reweigh the aggravating and mitigating circumstances in light of this opinion.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] After discussing impaired capacity, the trial judge determined that "[t]his mitigating circumstance is not applicable."
[2] After discussing this circumstance, the trial court stated that "it is the finding of this court that this is not a mitigating factor."
[3] As with statutory mitigating circumstances, proposed nonstatutory circumstances should generally be dealt with as categories of related conduct rather than as individual acts. Examples of categories are contained in footnote 4.
[4] This is a question of law. A mitigating circumstance can be defined broadly as "any aspect of a defendant's character or record and any of the circumstances of the offense" that reasonably may serve as a basis for imposing a sentence less than death. Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2964-65, 57 L.Ed.2d 973 (1978). Valid nonstatutory mitigating circumstances include but are not limited to the following:

1) Abused or deprived childhood.
2) Contribution to community or society as evidenced by an exemplary work, military, family, or other record.
3) Remorse and potential for rehabilitation; good prison record.
4) Disparate treatment of an equally culpable codefendant.
5) Charitable or humanitarian deeds.
[5] This is a question of fact and the court's finding will be presumed correct and upheld on review if supported by "sufficient competent evidence in the record." Brown v. Wainwright, 392 So.2d 1327, 1331 (Fla. 1981).