708 So.2d 256 (1998)
Timothy Curtis HUDSON, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 85693.
Supreme Court of Florida.
February 5, 1998.
Rehearing Denied April 1, 1998.
*257 Kenneth David Driggs and M. Elizabeth Wells, Atlanta, GA, for Appellant/Cross-Appellee.
Robert A. Butterworth, Attorney General, and Robert J. Landry, Assistant Attorney General, Tampa, for Appellee/Cross-Appellant.
PER CURIAM.
We have on appeal an order of the trial court imposing a death sentence upon Timothy Curtis Hudson on resentencing. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. We remand for further consideration of the sentence by the trial court and preparation of a new sentencing order in which the trial court is to provide detailed written findings as to aggravating and mitigating evidence presented. We also have for review the State's cross appeal, in which the State raises three issues concerning the resentencing.[1] We find no error related to the State's claims.
Hudson was convicted of first-degree murder, armed burglary, and theft of an automobile and sentenced to death for the 1986 murder of Mollie Ewings. At the end of Hudson's first penalty proceeding, the trial court followed the jury's recommendation and sentenced Hudson to death.[2] On direct appeal, this court affirmed the conviction and sentence. Hudson v. State, 538 So.2d 829 (Fla.1989) (Hudson I.) In postconviction, the circuit court found that Hudson's penalty-phase counsel had provided ineffective representation in that he had failed to adequately investigate and present extensive mitigation evidence. We affirmed. Hudson v. State, 614 So.2d 482 (Fla.1993) (Hudson II.) A new penalty phase was conducted before a jury, which recommended death. The trial court imposed a second death sentence,[3] and Hudson appealed to this Court.
In Hudson II, the last time this case was before this Court, we upheld the trial court's determination that a new sentencing proceeding was necessary and specifically based our decision on the trial court's postconviction *258 order on defendant's motion to vacate, in which the trial court stated:
The issue now presented is whether there is a reasonable probability that, absent the deficiencies of counsel, the sentencer, which includes the Florida Supreme Court, would have concluded after an evaluation of the aggravating and mitigating circumstances, that death was not warranted in this case. The Court concludes that there is such a reasonable probability predicated in part on the opinion of the Florida Supreme Court which affirmed the Defendant's sentence of death by the narriwest of margins4 to 3. Hudson v. State, 538 So.2d 829 (1989).
At the defendant's trial, the mental health expert who examined the Defendant testified on cross examination that he had no evidence or information based on his research or review of reports that the Defendant either was or was not under the influence of cocaine at the time he committed this murder. At the evidentiary hearing he testified that based on that lack of evidence he was not in a position to intelligently convey to the jury what effect cocaine may have had on the Defendant at the time of the offense but that he now had significant information to be able to do so.
More significant is his testimony that had he possessed the information which was available through certain witnesses prior to the first trial, his testimony as to the mental health condition of the Defendant at the time of the offense would have been "substantially" more forceful, convincing, persuasive, understandable, and comprehensible with regard to how the Defendant would react while under the influence of cocaine as opposed to the speculative opinion he gave at trial. As he noted, this evidence convinced him that the Defendant "was a lot more severely disturbed than I realized at the time of this offense."
Had penalty phase counsel presented the available evidence relating to the Defendant's addiction to cocaine and its effect on his mental state and had penalty phase counsel given this information to the mental health expert thus allowing the expert to render a substantially more comprehensive and persuasive opinion, there is a reasonable probability that the sentencing judge would have given more weight to the two mitigating circumstances relating to the mental health of the Defendant which he considered. Had this been the case the sentencing judge, in undertaking his weighing process, may have found that these mitigating factors outweighed the two aggravating circumstances and may have sentenced the Defendant to life imprisonment thereby rejecting the jury's recommendation of death.
But, even assuming the sentencing judge would have still imposed the death penalty in the face of the omitted evidence, the Court finds there is a reasonable probability that the Florida Supreme Court's ultimate decision to affirm the death sentence would have been different. As is noted in that Court's opinion, it undertook a comprehensive proportionality review to determine whether the death penalty was appropriate in the Defendant's case. In ultimately rejecting the Defendant's position, the Court found one case to be "arguably a close call"Fitzpatrick v. State, 527 So.2d 809 (1988). However, the Court found that "Hudson's mitigating evidence is not as compelling as that presented by Fitzpatrick." Hudson, pg. 832 (emphasis supplied)
(Footnote and record citations omitted.)
Hudson's first issue in this present appeal is naturally whether, on the basis of the resentencing evidence, the sentence of death is proportionate. Unfortunately, the trial court's order on this resentencing is so lacking in detail that we cannot decide the proportionality issue. In its sentencing order, the trial court states in pertinent part:
II. STATUTORY MITIGATING FACTORS
A. The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance. Dr. Michael Maher, a psychiatrist, testified, without contradiction, that the defendant, at the time of the murder, was suffering from an extreme mental or emotional disturbance because *259 of cocaine addiction and ingestion, a personality disorder and a deprived background. The court was not convinced by this testimony that the defendant's condition in this regard was either substantial or extraordinary and the court assigns little weight to this mitigating circumstance.
B. The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements was substantially impaired. Dr. Maher's testimony supports a finding by the court that this mitigating circumstance indeed existed at the time of the murder.
III. NON-STATUTORY MITIGATING CIRCUMSTANCES
There was testimony concerning defendant's earlier years and family background and, though unfortunate, the court finds that this testimony did not establish anything substantial or extraordinary. It was established by the evidence, however, that the defendant cooperated with the police in locating the body of the victim and the court finds this to be a single non-statutory mitigating circumstance.
As Hudson alleges in his second issue, this summary analysis of both statutory and nonstatutory mitigation plainly does not evaluate in writing the evidence presented or explain the reason for the trial court's weighing of the mitigation evidence. Thus, this sentencing order is in violation of our 1990 decision in Campbell v. State, 571 So.2d 415 (Fla.1990). We repeat here the sentencing requirements we reiterated in Walker v. State, 707 So.2d 300 (Fla. 1997).
Since the ultimate penalty of death cannot be remedied if erroneously imposed, trial courts have the undelegable duty and solemn obligation to not only consider any and all mitigating evidence, but also to "expressly evaluate in [their] written order[s] each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence." Campbell, 571 So.2d at 419; Ferrell v. State, 653 So.2d 367, 371 (Fla.1995) (reaffirming Campbell and establishing enumerated requirements for treatment of mitigating evidence).
This bedrock requirement cannot be met by treating mitigating evidence as an academic exercise which may be summarily addressed and disposed of. To satisfy Campbell:

This evaluation must determine if the statutory mitigating circumstance is supported by the evidence and if the non-statutory mitigating circumstance is truly of a mitigating nature. A mitigator is supported by evidence if it is mitigating in nature and reasonably established by the greater weight of the evidence. Once established, the mitigator is weighed against any aggravating circumstances. It is within the sentencing judge's discretion to determine the relative weight given to each established mitigator; however, some weight must be given to all established mitigators. The result of this weighing process must be detailed in the written sentencing order and supported by sufficient competent evidence in the record. The absence of any of the enumerated requirements deprives this Court of the opportunity for meaningful review.

Ferrell, 653 So.2d at 371 (emphasis added). Clearly then, the "result of this weighing process" can only satisfy Campbell and its progeny if it truly comprises a thoughtful and comprehensive analysis of any evidence that mitigates against the imposition of the death penalty. We do not use the word "process" lightly. If the trial court does not conduct such a deliberate inquiry and then document its findings and conclusions, this Court cannot be assured that it properly considered all mitigating evidence. In such a situation, we are precluded from meaningfully reviewing the sentencing order. Id. Since that is precisely the case here, we must vacate the sentence of death and remand for a proper evaluation and weighing of all nonstatutory mitigating evidence....
Walker at 319; see also Jackson v. State, 704 So. 2d 500(Fla. 1997); Reese v. State, 694 So.2d 678 (Fla.1997).
*260 In this case, a new sentencing order with detailed findings is plainly necessary. As set forth in the trial court's order vacating the death sentence, the reason for ordering a resentencing was based upon the court's analysis that further development of mitigation in the first sentencing probably would have resulted in a life sentence rather than a death sentence.
The sentencing order for this resentencing must deal directly with the issue that caused the court to vacate the initial sentencing order. Our reading of the record shows that the trial court must consider, address, and weigh in detail the testimony of defense expert Dr. Maher (on direct and cross-examination) and other witnesses concerning Hudson's drug use, including the following considerations: whether Hudson was intoxicated by crack cocaine at the time of the murder; how Hudson reacted to crack cocaine ingestion; whether the murder was related to crack cocaine intoxication; and whether the prior violent felonies were related to drug use. The trial court also must consider, address, and weigh resentencing testimony concerning a domestic dispute between Hudson and Collins as well as testimony about Hudson's family history; Hudson's degree of cooperation with law enforcement officers; Hudson's character traits as demonstrated by various activities; and Hudson's potential for adapting to a structured life in prison. In considering and weighing this evidence, the court shall consider cases from this Court which have evaluated the presentation of mitigation evidence in sentencing orders. See Spencer v. State, 691 So.2d 1062 (Fla.), cert. denied, ___ U.S. ___, 118 S.Ct. 213, 139 L.Ed.2d 148 (1997); Orme v. State, 677 So.2d 258 (Fla.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997); Pope v. State, 679 So.2d 710 (Fla.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 975, 136 L.Ed.2d 858 (1997); Morgan v. State, 639 So.2d 6 (Fla.1994); White v. State, 616 So.2d 21 (Fla.1993); Nibert v. State, 574 So.2d 1059 (Fla.1990); Farinas v. State, 569 So.2d 425 (Fla.1990).
By listing mitigation evidence and legal authority, we do not intend to provide an exhaustive catalog. Rather, we intend to underscore our requirement that the trial court undertake a complete review and analysis in its sentencing order. We further direct the trial court to refer to the model sentencing order included as part of judicial educational materials developed by Chief Judge Schaeffer of the Sixth Judicial Circuit and published in Handling Capital Cases, 1997 Florida College of Advanced Judicial Studies, Appendix A, at 61 (Florida Court Education Council, May 1997). We also direct the trial court to consider our decisions in Campbell, Walker, Jackson, and Reese before preparing the sentencing order.
Although we remand the case for further consideration by the trial court and for a new sentencing order, we will here decide the other issues in this appeal and cross appeal. Hudson raises sixteen issues in this direct appeal of his resentencing.[4] We here address issues three, six, seven, ten, and eleven. We find issues four, five, eight, nine, and twelve to be procedurally barred because they were not preserved for appellate review.
*261 We find no merit in Hudson's claims in issues thirteen, fourteen, fifteen, and sixteen.
In its cross appeal, the State contends that the trial court erred in failing to instruct upon, consider, and find the aggravating factor of heinous, atrocious, or cruel and in failing to consider and find the aggravating factor of capital felony committed while under a sentence of imprisonment or community control. Our review of the record reveals no abuse of discretion by the trial court in declining to apply these factors. Accordingly, we find no merit in the State's cross appeal.
In Hudson's third issue, he argues that the trial court erred during the resentencing proceeding by not allowing Hudson's counsel to cross-examine Linda Benjamin, the victim of the prior violent felony for which Hudson had been convicted. Although Benjamin did not testify at the resentencing, the details of Hudson's sexual assault upon her were presented to the jury by Tampa police officer Keith Bush, who had worked the Benjamin case in 1982. Bush testified that he responded to a complaint by Benjamin, who told Bush that she was awakened during the night in her home by a man standing at the foot of her bed and wearing a T-shirt and underwear. Bush testified at the resentencing:
At that time the subject pushed back on the bed, inserted his finger into her vagina and then attempted to insert his penis. Subject stated person by the name B.J. hired him to kill her.
[Benjamin] fought with the black male and screamed and the children also screamed and the suspect ran out of the house through the back door.
The State then introduced into evidence a certified copy of the prior conviction, establishing that Hudson pled guilty to charges of burglary and sexual battery in connection with the Benjamin case.
We find no merit in Hudson's argument as to the prior felony evidence because we have held that it is appropriate during penalty proceedings to introduce details of a prior violent felony conviction rather than the bare admission of the conviction in order to assist the jury in evaluating the character of the defendant and the circumstances of the crime. Rhodes v. State, 547 So.2d 1201, 1204 (Fla.1989). In such circumstances, hearsay testimony is admissible, provided the defendant has a fair opportunity to rebut it. § 921.141(1), Fla. Stat. (1985). In Waterhouse v. State, 596 So.2d 1008 (Fla.1992), we found no error in the trial court's allowing a police officer to testify about details of a prior murder for which Waterhouse had been convicted. Id. at 1016. Similarly, we find no error by the trial court in connection with the testimony of Officer Bush, who described the circumstances of the sexual assault for which Hudson had previously been convicted. Furthermore, any confrontation error is harmless in this case because introduction of the certified copy of the judgment reflecting Hudson's guilty plea to the prior felony established beyond a reasonable doubt the aggravating circumstance of prior conviction for a felony involving the use or threat of violence. Tompkins v. State, 502 So.2d 415, 420 (Fla.1986).
Sixth, Hudson claims that the trial court erred in permitting the State to exercise a peremptory challenge of a potential juror in a racially discriminatory manner. After reviewing the record, we find that the trial court's conduct of voir dire met the requirements this Court set forth in Curtis v. State, 685 So.2d 1234 (Fla.1996), and Melbourne v. State, 679 So.2d 759 (Fla.1996).
During voir dire, the State asked venireperson Siplin whether he would be able to recommend the death penalty after hearing from the defendant's family members and knowing they were in the courtroom. Siplin responded:
Well, it would be a lot of doubt in my mind because I'm a strong family man and I don't know if seeing his family in the courtroom would affect me somehow make my decision [sic].
Next, Hudson's counsel established that Siplin could follow the law and impose the death penalty, if the evidence so dictated, despite seeing Hudson's family members in the courtroom. Nevertheless, the State used a *262 peremptory challenge on Siplin.[5] The defense objected, citing State v. Neil, 457 So.2d 481 (Fla.1984), and Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In giving a reason for the challenge in accord with Melbourne the State responded:
And, Your Honor, heMr. Siplin, although was equivocal about whether or not he would be able to render a death recommendation with the defendant's family in the courtroom, he said he was a strong family man and it would be very difficult for him. So I don't think he raised a level of cause, on the other hand, his answer gave me concern.
In sustaining the peremptory strike, the court stated:
[T]hat is a race neutral reason. If he weren't a black man and you wanted to peremptory challenge him, I think we would all understand why. So that being the standard, I'm going to find that is a sufficient reason.
Our review of the entire record indicates that the court met the requirements we set forth in Melbourne and Curtis by examining the genuineness of the State's explanation and finding the State's reason for challenge to be nonpretextual. Curtis, 685 So.2d at 1237. Thus, we do not find that the trial court clearly erred in sustaining the peremptory strike of venireperson Siplin. Additionally, we find this claim to be procedurally barred because Hudson accepted the jury without renewing his challenge. Joiner v. State, 618 So.2d 174 (Fla.1993).
Seventh, Hudson argues that the trial court erred in excluding potential jurors based on their views concerning the death penalty. We have reviewed the answers given by each of the potential jurors, and we believe the trial court properly excused them in accord with Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985); Johnson v. State, 660 So.2d 637 (Fla.1995); and Castro v. State, 644 So.2d 987, 989 (Fla. 1994).
In his ninth issue, Hudson argues that the trial court erred in refusing to instruct the jury that if he were sentenced to life in prison, his sentence would be without any possibility of parole, as section 775.082, Florida Statutes, provided at the time of the resentencing in 1995.[6] In addition to finding this claim to be procedurally barred, we note that the trial court was correct in applying section 775.082, Florida Statutes (1985), which was in effect at the time of the crime in 1986 and which provides that if the jury does not impose a death sentence for a capital felony conviction, it shall impose a sentence of life imprisonment without possibility of parole for twenty-five years. The amended statute cannot be applied retroactively.
Hudson argues in his tenth issue that the trial court erred in imposing the aggravating circumstance of "capital felony committed while the defendant was engaged in the commission of an armed burglary." He alleges that the jury may have based its verdict on a felony murder theory, and if so, the jury's finding would transform the aggravating circumstance into an automatic and therefore unconstitutional aggravator because it would be predicated upon the same felony (burglary) that formed the basis for the conviction. However, this Court recently upheld this aggravator in Blanco v. State, 706 So.2d 7 (Fla. 1997). See also Orme v. State, 677 So.2d 258 (Fla.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997). Therefore, we find no error related to this claim.
Eleventh, Hudson argues that the trial court erred in conducting several portions of the resentencing proceeding in Hudson's absence. First, Hudson claims he was erroneously excluded from bench conferences in which Hudson's counsel argued about a jury instruction concerning possible sentences, discussed an objection to the State's closing argument, and discussed an objection to admission of prior convictions. We reject this claim based on our recent decision in Cole v. State, 701 So.2d 845 (Fla.1997), in which we *263 held that a defendant does not have a constitutional right to be present at bench conferences involving purely legal matters. Id. at 850 (citing Coney v. State, 653 So.2d 1009, 1013 (Fla.), cert. denied, 516 U.S. 921, 116 S.Ct. 315, 133 L.Ed.2d 218 (1995), and Hardwick v. Dugger, 648 So.2d 100 (Fla.1994)). The record reflects that these conferences involved purely legal issues and Hudson's presence would not have aided counsel. This claim is also procedurally barred because neither Hudson nor his counsel contemporaneously stated Hudson's desire to participate in the conferences. Cole, 701 So.2d at 850.
Hudson also alleges error in the court's permitting his absence from a bench conference concerning the removal of several jurors from the venire panel because of their answers concerning the death penalty. Our examination of the record reveals no error. See Boyett v. State, 688 So.2d 308 (Fla.1996). In Boyett, we held that our decision in Coney was prospective only.[7] The resentencing in this case occurred before Coney was decided.
As we stated earlier, we do remand this case for the trial court to again consider the sentence in this case. We direct the trial court, within 120 days of the issuance of this opinion, to hold an allocution hearing in which counsel are permitted to argue, orally and by written submission, the consideration and assignment of weight of mitigating evidence. The trial court shall, after the hearing but within the 120-day period, further consider the sentence and prepare a detailed written sentencing order addressing all the statutory and nonstatutory mitigation evidence presented and explaining the court's reasons for the weight the court assigns to it. The time period may be extended only by order of the Chief Justice of this Court.
Accordingly, for the reasons expressed, we vacate Hudson's death sentence and remand to the trial court to consider and prepare, within 120 days of the issuance of this opinion, a detailed sentencing order in compliance with Campbell.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, HARDING and WELLS, JJ., and GRIMES, Senior Justice, concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] The State claims that: (1) the trial court erred in failing to instruct the jury on the aggravating factor of heinous, atrocious, or cruel (HAC); (2) the trial court erred in failing to consider and apply the HAC aggravating factor; (3) the trial court erred in failing to consider and apply the aggravating factor of capital felony committed while under a sentence of imprisonment or community control.
[2] The court found the following statutory aggravating factors: (1) previous conviction of a felony (sexual battery) involving the use or threat of violence to the person; and (2) crime committed while engaged in the commission of an armed burglary. The court found these statutory mitigators: (1) under the influence of extreme mental or emotional disturbance (little or no weight); (2) substantially impaired capacity to conform conduct to requirements of the law; (3) age (twenty-two) of defendant at the time of the crime (slight weight). The court found no nonstatutory mitigation.
[3] The court found the following statutory aggravating factors: (1) previous conviction of a felony (sexual battery) involving the use or threat of violence to the person; and (2) crime committed while engaged in the commission of an armed burglary. The court found these statutory mitigators: (1) under the influence of extreme mental or emotional disturbance (little weight); and (2) substantially impaired capacity to appreciate the criminality of conduct or to conform conduct to requirements of the law. Concerning nonstatutory mitigation, the court noted "testimony concerning defendant's earlier years and family background" but found that it "did not establish anything substantial or extraordinary" and then found as a nonstatutory mitigating circumstance that Hudson cooperated with the police in locating the victim's body.
[4] Hudson claims that: (1) his death sentence is disproportionate; (2) the trial court erred in failing to evaluate nonstatutory mitigation; (3) the trial court erred in not allowing Hudson to cross-examine the victim of his prior violent felony; (4) the prosecutor's allegedly inflammatory and improper comments rendered Hudson's sentence fundamentally unfair and unreliable; (5) the trial court erred in admitting victim-impact evidence; (6) the trial court erred in allowing the State to exercise its peremptory strikes in a racially discriminatory manner; (7) the trial court improperly excluded potential jurors based on their views on capital punishment; (8) Hudson's sentence of death is being exacted pursuant to a pattern and practice of discrimination on the basis of race, sex, and poverty; (9) the court erred in denying Hudson's request to instruct the jury that a life sentence would be without parole; (10) the death sentence rests on an unconstitutional automatic aggravating circumstance; (11) Hudson's absence from portions of the proceedings prejudiced the penalty phase; (12) rulings by the trial court denied Hudson a fair trial; (13) the aggravating circumstance of prior violent felony is unconstitutionally vague and overbroad and improperly applied in this case; (14) the trial court erred in leading the jury to believe that the responsibility for their actions rested elsewhere; (15) the death penalty constitutes cruel and unusual punishment in that it is applied in an arbitrary and capricious fashion; (16) Hudson's trial was fraught with procedural and substantive errors.
[5] Siplin is African-American, as is Hudson. The victim, Mollie Ewings, was Caucasian.
[6] Section 775.082(1), Florida Statutes (1995), provides:

A person who has been convicted of a capital felony ... shall be punished by life imprisonment and shall be ineligible for parole.
[7] In Coney, this Court held that a defendant has a right under Florida Rule of Criminal Procedure 3.810 to be physically present at the immediate site where challenges to prospective jurors are exercised. Coney, 653 So.2d at 1013.