763 So.2d 295 (2000)
Troy MERCK, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. SC91581.
Supreme Court of Florida.
July 13, 2000.
Rehearing Denied October 10, 2000.
*296 James Marion Moorman, Public Defender, and Steven L. Bolotin, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida, for Appellant.
Troy Merck, Raiford, Florida, Appellant, pro se.
Robert A. Butterworth, Attorney General, and Robert J. Landry, Assistant Attorney General, Tampa, Florida, for Appellee.
PER CURIAM.
Troy Merck, Jr. appeals the death sentence imposed upon him after a remand for resentencing. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed herein, we reverse Merck's sentence of death and remand this case to the trial court for a new penalty-phase proceeding and a new sentencing order in which the trial court is to provide detailed written findings as to aggravating and statutory and nonstatutory mitigating evidence presented.
Merck was charged on November 14, 1991, in Pinellas County with first-degree murder. The case went to trial in November 1992 and ended in a mistrial because the jury was unable to reach a verdict. After a trial in September 1993, Merck was found guilty and sentenced to death. The facts of this case are set forth in detail in Merck v. State, 664 So.2d 939 (Fla.1995). This Court affirmed the conviction but reversed the death sentence based on our finding that juvenile adjudication as to a North Carolina shooting incident was not a "conviction" within the meaning of the statute making prior conviction of a violent felony an aggravating factor and that the court's finding of this aggravator was harmful error. Id. at 944.
Merck's resentencing took place in July 1997. The jury unanimously recommended a death sentence. The trial court found three aggravators: Merck was previously convicted of a felony and on felony probation (great weight); Merck was previously convicted of a felony involving the use or threat of violence to the person (one robbery, four armed robberies) (great weight); and the murder was especially heinous, atrocious, or cruel (HAC) (great weight). As statutory mitigators, the court found Merck's age (nineteen) (very little weight) and that the murder was committed while Merck was under the influence of extreme mental or emotional disturbance (little weight). As nonstatutory mitigation, the court found childhood abuse and deprivation (some weight); and learning disability, long-term alcohol abuse, chemically dependent parents, lack of a parental role model, and capability of forming loving relationships (some weight). After considering the relevant factors, the trial court sentenced Merck to death.
In this appeal of his resentencing Merck raises five claims through counsel and five additional claims in a supplemental pro se brief.[1] We will discuss only the dispositive *297 first, second, and fourth claims that Merck raised through counsel and find the remainder of Merck's claims to be moot in light of our finding of reversible error.
In his first two claims, Merck contends that the trial court did not comply with this Court's directions in Campbell v. State, 571 So.2d 415 (1990), in that the court failed to properly find, evaluate, or weigh evidence of Merck's alcohol abuse within the list of nonstatutory mitigating circumstances in the sentencing order. First, Merck claims that the court erred in failing to find, evaluate, or weigh evidence of Merck's long-term alcohol abuse as to nonstatutory mitigation. Second, Merck claims that the trial court erred in failing to find, evaluate, or weigh evidence of Merck's substantial alcohol intake on the night of the instant crime as a nonstatutory mitigator. We agree with both, of Merck's arguments as to the trial court's lack of findings concerning Merck's use of alcohol the night of the murder and his long-term alcohol abuse.
The trial court's sentencing order states as to the statutory mitigator of substantial impairment:
c. The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
Two experts testified that the defendant had a substance abuse alcohol disorder. Ron Bell, the defendant's expert toxicologist, testified that he estimated the defendant's blood alcohol level of [sic] to be in the range of 0.16-0.26 with an average level of 0.21 at the time of this murder. However, this information was not derived from a blood test but rather was estimated based upon testimony of alcohol consumption. He acknowledged that long term use of alcohol can increase tolerance levels.

The state's expert found the defendant did appreciate the criminality of his conduct and that the defendant's [ability to conform his] conduct to the requirements of the law was not impaired. The expert for the defense disagreed and testified that the defendant had no emotional appreciation of the significance of the killing and she stated that it was beyond his capacity to think or evaluate it. She testified that once the impulsiveness and aggression of the defendant began, it would not stop. She also testified that on the night of the homicide the defendant had excessive alcohol use; consequently, the defendant experienced emotional upheaval at the time of the homicide.
There was testimony from eyewitnesses which described the defendant as not appearing intoxicated, walking very deliberately to his friend's car, catching tossed keys in mid-air, unlocking and opening the car door, retrieving the knife and hiding it from the on-lookers. One eye witness testified that when the defendant caught the keys in mid-air, in response to his friend's comment "nice catch Troy," the defendant replied "don't use my real name." The defendant then proceeded in a deliberate fashion and brutally stabbed the victim. This testimony compels this Court to believe that the alcohol use on the night of the murder did not substantially impair the defendant.

State v. Merck, No. 91-16659 CFANO-M, sentencing order at 9-10 (Fla. 6th Cir. Ct. order filed Sept. 12, 1997) (emphasis added).
As to nonstatutory mitigation, the trial judge wrote in her order:
2. Non-statutory Mitigating Factors
The defendant asked the Court to consider these non-statutory mitigating factors:
a. The defendant was under the influence of alcohol.

*298 The Court has addressed this factor under the defendant's third statutory mitigating factor regarding his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.
. . . .
c. Defendant lists as additional non-statutory factors his learning disability, his long-term alcohol abuse, his chemically dependent parents, his rejection by two father figures, his lack of a parental role model, his lack of a male parent, and his capability to form loving relationships. Several of these factors have been previously discussed. As to the remaining factors; First, as to his learning disability, the testimony showed that such disorder does not impact on development. Many children have learning disabilities and grow up to be responsible citizens. Second, as to his lack of a parental role model, his sisters, aunts, and foster parents all testified about helping him to grow up and exposing him to love. Third, as to defendant having the capacity to form a loving relationship, the Court considered the testimony of his family members and his parents. These factors have been considered by this Court and will be given some weight.

State v. Merck, sentencing order at 11-12 (emphasis added).
The trial court, in considering mitigating evidence, must determine whether the facts alleged in mitigation are supported by the evidence. See Bonifay v. State, 680 So.2d 413, 416 (Fla.1996) (citing Rogers v. State, 511 So.2d 526, 534 (Fla. 1987)). A trial court is obligated to find and weigh all valid mitigating evidence available in the record at the conclusion of the penalty phase. See Cheshire v. State, 568 So.2d 908, 911 (Fla.1990). Evidence is mitigating if, in fairness or in the totality of the defendant's life or character, it may be considered as extenuating or reducing the degree of moral culpability for the crime committed. See Wickham v. State, 593 So.2d 191, 194 (Fla.1991).
In Campbell, we held that a sentencing court must expressly evaluate in its written order each mitigating circumstance proposed by the defendant to determine whether it is supported by the evidence and whether, in the case of non-statutory factors, it is truly of a mitigating nature. See 571 So.2d at 419. Here, we find that the trial judge erred in that her explanation in the sentencing order of her evaluation as to nonstatutory mitigation failed to include Merck's drinking on the night of the murder or Merck's long-term alcohol abuse.
In the sentencing order, the trial court correctly stated that Merck had urged the court to find the two alcohol-related non-statutory mitigators. However, we find the court's reference back to a one-sentence discussion of evidence of Merck's long-term alcohol abuse in the statutory mitigation section of the order to be insufficient as to our Campbell sentencing order requirement. Likewise, although the trial court did discuss in the sentencing order evidence of Merck's drinking alcohol the night of the murder, this discussion was only in the context of finding that this evidence did not prove a statutory mitigator and is insufficient as to our Campbell sentencing order requirement. The sentencing order concludes that the long-term alcohol abuse was considered together with nonstatutory factors of Merck's "learning disability, ... his chemically dependent parents, his rejection by two father figures, his lack of a parental role model, his lack of a male parent, and his capability to form loving relationships." State v. Merck, sentencing order at 12. Merck alleges this analysis of nonstatutory mitigation does not evaluate the evidence presented as nonstatutory mitigation or explain the reasoning for the trial court's weighing of nonstatutory mitigation. This is a violation of the requirements we set forth in Campbell. See Hudson v. State, 708 So.2d 256, 259-60 (Fla.1998). The nonstatutory mitigation section of the sentencing order for this resentencing must deal directly with any evidence, including Merck's alleged alcohol abuse, that Merck *299 presents to the court as nonstatutory mitigation.
In his fourth claim, which is also dispositive, Merck argues that the trial court erred in instructing the jury upon and then finding as an aggravating circumstance the fact that Merck had previously been convicted of a felony and was placed on felony probation. He asserts that the instruction upon and finding of the felony probation aggravator, which did not exist at the time of the instant murder, violates the ex post facto provisions of the United States and Florida Constitutions.[2]
The instant murder was committed on October 12, 1991, and Merck's resentencing proceeding began on July 15, 1997. At the time of this crime, the first aggravator listed in Florida's death penalty statute provided in relevant part:
(5) AGGRAVATING CIRCUMSTANCES. Aggravating circumstances shall be limited to the following:
(a) The capital felony was committed by a person under sentence of imprisonment or placed on community control.
§ 921.141(5)(a), Fla. Stat. (1995). At the time of the murder, the aggravator provided in subsection (5)(a) did not apply to persons on probation. See Ferguson v. State, 417 So.2d 631, 636 (Fla.1982); Bolender v. State, 422 So.2d 833, 837 (Fla. 1982); Peek v. State, 395 So.2d 492, 499 (Fla.1980). Thereafter, the Legislature amended section 921.141(5)(a) to add "or on probation," ch. 96-290, § 5, Laws of Fla., and further revised subsection (5)(a) again to specify "felony probation" and previous felony conviction. Ch. 6-302, § 1, Laws of Fla. Pursuant to these amendments, probationary status did not become a statutory aggravator until May 30, 1996.
In this case, the trial court instructed the jury that in deliberating its sentencing recommendation it could consider as an aggravating circumstance the fact that Merck was on felony probation. In her sentencing order, the judge found felony probation as one of three aggravating circumstances. Merck contends that the Legislature's amendment of section 921.141(5)(a) subsequent to the instant crime to add probation to the list of statutory aggravators was a substantive change in the law, not a mere refinement of the law as this Court found the "community control" aggravating circumstance to be in Trotter v. State, 690 So.2d 1234 (Fla.1996). In Trotter, this Court held that the trial court's use of the fact that the murder was committed while the defendant was on community control did not violate the defendant's ex post facto rights, even though the crime and sentencing took place before the sentencing provision was amended to add the "community control" aggravator. Id. at 1237. However, during the time that this case has been under review, this Court has found ex post facto violations in two applications of the felony probation aggravator. See Lukehart v. State, 762 So.2d 482 (Fla.2000); Zack v. State, 753 So.2d 9 (Fla.2000). On the basis of the present record, we cannot find the error harmless beyond a reasonable doubt.
In view of our finding of error in the trial court's sentencing order and our striking of the felony probation aggravator, we find that this case must be remanded for a resentencing. Accordingly, we vacate the sentence of death and order a complete new penalty-phase proceeding before a jury.
It is so ordered.
WELLS, C.J., and HARDING, PARIENTE, LEWIS and QUINCE, JJ., concur.
SHAW and ANSTEAD, JJ., concur in result only.
NOTES
[1] Through counsel, Merck claims that: (1) the trial court erred in its sentencing order in failing to find and evaluate evidence of Merck's history of alcohol abuse as a nonstatutory mitigating circumstance; (2) the trial court erred in failing to find Merck's excessive drinking on the night of the crime as a nonstatutory mitigating circumstance; (3) Merck's death sentence is not proportional; (4) the trial court erred in finding as an aggravating factor that the crime was committed while Merck was on felony probation; and (5) the trial court erred in excluding from the resentencing proceedings evidence as to another suspect in the instant crime.

In his pro se supplemental brief, Merck raises the following issues: (1) denial of assistance of counsel during the guilt phase of Merck's trial; (2) knowing use of perjured testimony of a police detective by the prosecution during the guilt phase; (3) guilty verdict contrary to the law or weight of the evidence; (4) improper penalty-phase comments by the prosecutor concerning religion; and (5) error in excluding potential jurors who expressed reservations about imposing a death sentence.
[2] Article I, section 9 of the United States Constitution provides in relevant part: "No bill of attainder or ex post facto Law shall be passed." Article I, section 10 of the Florida Constitution provides in relevant part: "No bill of attainder, ex post facto law or law impairing the obligation of contracts shall be passed."