768 So.2d 1050 (2000)
Robert TREASE, Appellant,
v.
STATE of Florida, Appellee.
No. SC89961.
Supreme Court of Florida.
August 17, 2000.
Rehearing Denied October 11, 2000.
*1052 James Marion Moorman, Public Defender, and Andrea Norgard, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Robert J. Landry, Assistant Attorney General, Tampa, Florida, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty on Robert Trease. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. We affirm the convictions and sentence.
On August 17, 1995, Hope Siegel arranged a date with the victim, Paul Edenson, so Trease could learn where the victim hid his safe. When Siegel arrived at the victim's home they talked for a while, after which Siegel departed and walked to Trease's location, and told him that the victim did not have a safe. Trease followed her back to the victim's house where he surprised the victim and battered him in an effort to get the sought-after information. Upon the victim's insistence that he did not have a safe in the house, Trease told Siegel to get a gun which Trease put to the victim's head as he continued the questioning. The victim remained uncooperative so Trease fired a nonlethal bullet into his head and then sent Siegel for a knife with which he cut the victim's throat. An expert medical witness testified that the victim would have died a few minutes later.
Subsequent to their arrest, Trease denied any knowledge of the crime, but Siegel made a taped statement implicating both. The State had no physical evidence tying Trease to the crime, so Siegel's testimony was critical at trial. The jury found Trease guilty of first-degree murder, burglary, and robbery with a firearm.
During the penalty phase of the trial, the State submitted aggravating evidence that Trease had been previously convicted of several violent felonies; that the murder was committed to facilitate a burglary or robbery, to gain a pecuniary interest, and to avoid lawful arrest; and that the murder was heinous, atrocious, and cruel. Trease submitted mitigating evidence that he was abused as a child, that he adjusted well to incarceration, that he helped prevent the suicide of an inmate, and that Siegel had received a disparate sentence. The trial court imposed the death sentence[1] *1053 in compliance with the jury's eleven-to-one vote and Trease filed the instant appeal.
Trease argues on appeal that the trial court abused its discretion in denying his motion for the appointment of co-counsel based on his pretrial argument that his court-appointed counsel would lack credibility with the sentencing jury after having lost in the guilt phase. The appointment of multiple counsel to represent an indigent defendant is within the discretion of the trial court judge, and is based on a determination of the complexity of the case and the attorney's effectiveness therein. See Ferrell v. State, 653 So.2d 367, 369-70 (Fla.1995); Armstrong v. State, 642 So.2d 730, 737 (Fla.1994). Here, the trial court properly denied Trease's request because he failed to show that the case was so complex that co-counsel was necessary. Furthermore, the trial court emphasized that he specifically appointed Trease's defense counsel because he could handle the case since he was one of the best capital defense attorneys in their circuit. The trial court also stated that counsel could take as much time as he needed to prepare the defense, and invited Trease to renew the request if he could make a better showing of a need for co-counsel. We find no abuse of discretion.[2]
Trease next claims that the trial court erred in denying his motion for new counsel based on his attorney's legal advice and two generalized statements not concerning this case. When a defendant requests that the trial court discharge his court-appointed attorney for ineffective assistance, the court is obligated to determine whether adequate grounds exist for the attorney's discharge. See Hardwick v. State, 521 So.2d 1071, 1074-75 (Fla.1988)(holding that a motion to discharge counsel for incompetence requires that the trial court inquire into the actual effectiveness of counsel); Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973). If the court finds that the defendant does not have a legitimate complaint, then the court is required to advise the defendant that if his request to discharge is granted, the court is not required to appoint substitute counsel and that the defendant would be exercising his right to represent himself. See Hardwick, 521 So.2d at 1074. If the defendant still desires to discharge his counsel, the court must determine whether the defendant is knowingly and intelligently waiving his right to court-appointed counsel. See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
In the present case, the trial court properly denied Trease's motion because he failed to state a legitimate reason for discharge. Trease's displeasure with defense counsel's negative response to his desire to file a motion to change venue was not an adequate reason to support discharge because counsel properly advised Trease that such a motion was untimely in that the trial court would not grant such a motion without first trying to empanel an impartial jury. Moreover, Trease's displeasure with counsel's advice regarding a *1054 plea offer entailing life imprisonment was not a sufficient reason for discharge. Defense counsel's theoretical statement regarding a heightened level of work for a client he knew to be 100% innocent and his impression that most of his clients were guilty do not support a finding of incompetence. Finally, Trease repeatedly stated that he did not want to represent himself.[3] We find no abuse of discretion.
Trease further claims that the trial court abused its discretion in granting the State's pretrial motion in limine, thereby prohibiting the defense from cross-examining Siegel regarding her alleged $200 per day cocaine habit without defense counsel first proffering to the trial court the sought-after testimony. The trial court relied on Edwards v. State, 548 So.2d 656 (Fla.1989), wherein this Court held that the introduction of evidence of drug use for the purpose of impeachment would be excluded unless:
(a) it can be shown that the witness had been using drugs at or about the time of the incident which is the subject of the witness's testimony; (b) it can be shown that the witness is using drugs at or about the time of the testimony itself; or (c) it is expressly shown by other relevant evidence that the prior drug use affects the witness's ability to observe, remember, and recount.
Id. at 658. To that end, the trial court in the instant case ordered that
the defense is hereby prohibited from mentioning in front of the jury or eliciting testimony from any witness without first proffering said testimony outside the presence of the jury concerning the following:
. . . .
4. That Hope Siegel ever used or ingested any controlled substances other than at or about the time of the homicide or at or about the time of Hope Siegel's trial testimony, unless the defense demonstrates via a proffer of testimony [or] by other relevant evidence that any prior drug use affected Hope Siegel's trial testimony with respect to her ability to observe, remember and recount.
During cross-examination, the defense did not attempt to establish via a proffer that there was testimony regarding cocaine use that it wanted to elicit and that the testimony satisfied Edwards.[4] Having failed to demonstrate the relevancy of the sought-after testimony by way of proffer, Trease cannot now claim error. See Finney v. State, 660 So.2d 674, 684 (Fla.1995)("Without a proffer it is impossible for the appellate court to determine whether the trial court's ruling was erroneous and if erroneous what effect the error may have had on the result."); Lucas v. State, 568 So.2d 18, 22 (Fla.1990)(holding that a party's failure to proffer what a witness would have said on cross-examination renders an alleged trial court error in the exclusion thereof unpreserved). We find no error.[5]
*1055 Trease also claims that the trial court erred in assigning "little or no" weight to a nonstatutory mitigating factor in the sentencing order. The relative weight given each mitigating factor is within the discretion of the sentencing court. See Campbell v. State, 571 So.2d 415, 420 (Fla.1990). This Court has permitted trial courts to assign "little or no" or "little to no" weight to such factors. See Wike v. State, 698 So.2d 817, 819 n. 1, 823 (Fla.1997)(little or no), cert. denied, 522 U.S. 1058, 118 S.Ct. 714, 139 L.Ed.2d 655 (1998); Sims v. State, 681 So.2d 1112, 1119 (Fla.1996)(little to no). These findings, however, are inconsistent with this Court's holding in Campbell that "a mitigating factor once found cannot be dismissed as having no weight" since "little to no" or "little or no" incorporates the possibility that the mitigating factor though found has been accorded no weight. 571 So.2d at 420; see Gudinas v. State, 693 So.2d 953, 966 (Fla.1997).
We hereby recede from our opinion in Campbell to the extent it disallows trial courts from according no weight to a mitigating factor and recognize that there are circumstances where a mitigating circumstance may be found to be supported by the record, but given no weight. The United States Supreme Court has held that a sentencing jury or judge may not preclude from consideration any evidence regarding a mitigating circumstance that is proffered by a defendant in order to receive a sentence of less than death. See Hitchcock v. Dugger, 481 U.S. 393, 394, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987); Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Nevertheless, these cases do not preclude the sentencer from according the mitigating factor no weight. We therefore recognize that while a proffered mitigating factor may be technically relevant and must be considered by the sentencer because it is generally recognized as a mitigating circumstance, the sentencer may determine in the particular case at hand that it is entitled to no weight for additional reasons or circumstances unique to that case. For example, while being a drug addict may be considered a mitigating circumstance, see Mahn v. State, 714 So.2d 391, 401 (Fla. 1998), that the defendant was a drug addict twenty years before the crime for which he or she was convicted may be sufficient reason to entitle the factor to no weight. See Kormondy v. State, 703 So.2d 454, 457 (Fla.1997)(The trial judge found that "although the fact of Kormondy's drug addiction is established by the evidence, the Court finds that his addiction is not reasonably established as a non-statutory mitigating factor and gives it no weight.")(vacating the death sentence on other grounds).
Trease's last argument is that the trial court erred in finding that he killed the victim to avoid lawful arrest. The aggravator of killing with the intent to avoid lawful arrest applies to witness elimination. *1056 See Consalvo v. State, 697 So.2d 805, 819 (Fla.1996), cert. denied, 523 U.S. 1109, 118 S.Ct. 1681, 140 L.Ed.2d 819 (1998). In such cases, "`the mere fact of a death is not enough to invoke this factor.... Proof of the requisite intent to avoid arrest and detection must be very strong....' [T]he evidence must prove that the sole or dominant motive for the killing was to eliminate a witness." Id. (quoting Riley v. State, 366 So.2d 19, 22 (Fla.1978)); see, e.g., Harvey v. State, 529 So.2d 1083, 1087 (Fla.1988)(holding that murders were committed for the purpose of avoiding lawful arrest where the murderers discussed in the victims' presence and the need to kill them to avoid being identified). Here, the finding of the aggravator is supported by Siegel's testimony that Trease told her that the victim had to be killed because he could identify them, in addition to evidence that the victim would have been able to identify Trease if he had lived because he and Trease were acquaintances. The above evidence strongly shows that Trease's intention in killing the victim was solely or dominantly to avoid arrest via witness elimination.
Finally, this Court finds that imposition of the death sentence in the instant case is proportionate. See Jennings, 718 So.2d at 154 (holding that this Court must review proportionality of death sentence even if the issue is not raised by the defendant). Appellant has substantial aggravating factors: (1) previous violent felony convictions; (2) the murder was committed while engaged in a burglary or robbery; (3) the murder was committed to avoid arrest; (4) the murder was committed for pecuniary gain; and (5) the murder was heinous, atrocious, or cruel. No statutory mitigation was found, although the trial court found nonstatutory mitigating factors of (1) child abuse-considerable weight; (2) Trease adjusted well to incarceration and helped prevent an inmate's suicide-little or no weight; and (3) Siegel received a disparate sentence-little weight. In Moore v. State, 701 So.2d 545 (Fla.1997)(upholding death sentence where aggravators included prior violent felonies, avoiding arrest, and pecuniary gain; and where statutory mitigator of defendant's age (nineteen) was established), this Court explained:
We have upheld the death sentence in other cases based on only two of the three aggravating factors present here.... In Melton v. State, 638 So.2d 927 (Fla.1994), we held the death penalty was proportionate where there were two aggravating factors (the murder was committed for pecuniary gain and the defendant had been convicted of a prior violent felony) and some nonstatutory mitigation. We find that the death penalty was proportionate here. See also Consalvo [, 697 So.2d at 811, 820] (holding death penalty was proportionate where there were two aggravating factors avoiding arrest and commission during the course of a burglarywith some nonstatutory mitigation).
Id. at 551-52. Furthermore, imposition of the death sentence is proportionate in this case when it is compared to Pope v. State, 679 So.2d 710, 712 n. 1, 716 (Fla. 1996)(death sentence held proportionate where aggravators were a previous violent felony and that the murder was committed for pecuniary gain; where the statutory mitigators were extreme mental or emotional disturbance and impaired capacity to appreciate the criminality of his conduct; and where nonstatutory mitigation included intoxication at the time of the offense, the violence occurred subsequent to a boyfriend/girlfriend dispute, and the defendant was under the influence of a mental or emotional disturbance), and Whitton v. State, 649 So.2d 861, 864 & n. 6, 867 (Fla.1994)(finding death sentence proportionate where defendant had five aggravating factors, no statutory mitigation, and nine nonstatutory mitigating circumstances). Thus, Trease's death sentence is proportionate.
*1057 We therefore affirm Trease's convictions and his sentence of death.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, PARIENTE, LEWIS and QUINCE, JJ., concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] The trial court found the following statutory aggravating factors: (1) previous violent felonies against persons; and that the murder was committed (2) while engaged in a burglary or robbery, (3) to avoid arrest, and (4) for pecuniary gain; and (5) the murder was heinous, atrocious or cruel. Based on Trease's evidence, the trial court found three nonstatutory mitigating factors and assigned weight to each factor: (1) Trease's abuse as a child"considerable" weight; (2) Trease adjusted well to incarceration and helped prevent an inmate suicide-"little or no" weight; and (3) Siegel's disparate sentence-"little" weight. The trial court gave "great weight" to the jury's recommendation, and concurred "with the jury's finding that the aggravating circumstances found to exist outweigh[ed] the mitigating circumstances."
[2] Discretion is abused only "when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court." Huff v. State, 569 So.2d 1247, 1249 (Fla.1990).
[3] In the same issue on appeal, Trease intertwines a claim of error based on the trial court's denial of defense counsel's motion to withdraw because of Trease's uncooperativeness arising from his claims in his motion for new counsel. The trial court disposed of the motions together since they were interwoven and involved the same factual basis. We find no abuse of discretion based on the trial court's findings that defense counsel was competent and had acted ethically. See Johnston v. State, 497 So.2d 863, 868 (Fla.1986)("General loss of confidence or trust standing alone will not support withdrawal of counsel.").
[4] Furthermore, after the trial court presented the parties with the written order on the motion in limine, defense counsel failed to object to the trial court's ruling, and said that he read it and had "no objection." The defense cross-examined Siegel, however, on her use of the drugs vicodin, valium, and marijuana and her consumption of alcohol around the time of the murder.
[5] Trease raises an additional evidentiary issue claiming that the trial court erred by admitting various pieces of alleged "bad act" evidence. We disagree. Evidence of Trease's proficiency in the martial arts and in how to use a knife, his threat to "cap" a police officer, his repeated requests of acquaintances as to whether they knew of any rich people with safes that they could steal from, and evidence that Trease lied to law enforcement officers about his use of certain drugs were relevant. See Bryan v. State, 533 So.2d 744, 746 (Fla.1988)(holding that the controlling issue in the admissibility of evidence is relevance). Testimony that Trease referred to himself as a law enforcement officer seems irrelevant, but it could only constitute harmless error. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986). Trease also takes issue with alleged testimony that he referred to himself as a "gigolo"; however, the record shows that the trial court sustained Trease's objection thereto and provided a curative instruction to the jury, and that Trease did not move for a mistrial. We find no reversible error.

As a final matter regarding Trease's guilt, we determine that the above evidence-especially Siegel's testimony that Trease shot the victim in the head and cut his throat with a knife-is sufficient to support Trease's conviction for first-degree murder. This finding is pursuant to this Court's duty to determine whether a death-sentenced defendant's murder conviction is supported by the evidence, even if the issue is not raised by the defendant on direct appeal. See Jennings v. State, 718 So.2d 144, 154 (Fla.1998), cert. denied, 527 U.S. 1042, 119 S.Ct. 2407, 144 L.Ed.2d 805 (1999).